(77 South. 827)

WARD et al. v. McDONALD. (6 Div. 443.)

(Supreme Court of Alabama. Jan. 17, 1918.)

1. MUNICIPAL CORPORATIONS ☞986 — TAX LEVY—USE TO PAY BONDS—CONSTITUTIONAL PROVISIONS—"AUTHORIZED."

In spite of Const. 1901, § 222, directing general laws for issue of city bonds upon popular vote, and section 225, limiting indebtedness of cities, but not applying to "debts now authorized by law to be created" in which "authorized" means "permitted," section 216 limiting tax rate, but allowing Birmingham to levy a special tax of one half of 1 per cent. for payment of principal and interest on bonds "heretofore issued in pursuance of law or now authorized by law to be issued," cannot be construed to permit use of special tax for bonds authorized under Laws 1903, p. 59 (Code 1907, § 1421 et seq.), subsequent to Const. 1901.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Authorize.]

2. CONSTITUTIONAL LAW ☞20 — CONSTRUCTION—RELATION TO FORMER CONSTITUTION AND STATUTES.

The new charter of Birmingham (Loc. Laws 1898–99, p. 1391, § 42), authorizing the application of proceeds of special tax of one-half of 1 per cent. to bonds which may "hereafter" be issued as well as "heretofore," is in violation of Const. 1875, art. 11, and cannot be considered a legislative construction of such article, or of the similar provisions of Const. 1901, § 216.

3. CONSTITUTIONAL LAW ☞20—SUBSEQUENT EXECUTIVE CONSTRUCTION.

A construction of a statute constituting part of city charter by the officers of the city, which violates the state Constitution, will not be presumed to be adopted by the placing of similar requirements in the new Constitution.

4. CONSTITUTIONAL LAW ☞19 — CONTEMPORANEOUS CONSTRUCTION.

The doctrine of contemporaneous construction has no application to Const. 1901, § 216, providing for the use of special tax for payment of interest and principal of bonds "heretofore issued," since its meaning is not doubtful.

5. CONSTITUTIONAL LAW ☞47 — CONSTRUCTION—INTENT AND POLICY.

The Constitution will be followed as written, in the matter of city bonds and taxation, without regard to resulting inconvenience, leaving the makers of the Constitution to remedy its defects.

Appeal from City Court of Birmingham; H. A. Sharpe, Judge.

Suit by T. C. McDonald against George B. Ward and others. From an order granting a preliminary injunction, defendants appeal. Affirmed.

The appeal in this cause is from an order granting a preliminary injunction. The bill was filed by the appellee, as a resident taxpayer of the city of Birmingham, against the commissioners of said city, and sought an injunction against the city to prevent the issuance of $3,000,000 of bonds, and also the diversion of the special tax of one-half of 1 per centum, which Birmingham is empowered to levy under section 216 of the Constitution, and an accounting as to the amount of the sinking fund directed to be accumulated by that section out of the proceeds of such special tax—not necessary to pay the interest on the bonds, to pay which under that section such special tax might be used. The substance of the bill as amended is as follows:

The city of Birmingham has outstanding bonded indebtedness approximating the sum of $7,110,000, exclusive of the bonds issued by said city for street and similar improvements. The interest charges on said outstanding bonds of approximately $7,110,000 approximates the sum of $369,000 per annum. The outstanding bonds of approximately $7,110,-000 include the outstanding bonds of the various municipalities which have been absorbed in the municipality of the city of Birmingham—said assumed bonds amounting to $1,320,000. Of the outstanding bonds solely of the city of Birmingham approximately $2,160,000, face value thereof, were issued prior to the adoption of the Constitution of 1901; the annual interest charges being approximately $121,500.

In addition to the above-mentioned bonded indebtedness, at an election held on June 5, 1916, the electors of the city of Birmingham authorized the issuance of bonds in the sum of $2,000,000 for the purpose of acquiring school property, in the sum of $500,000 for

---

the purpose of acquiring an auditorium, and $500,000 for the purpose of acquiring an electric light and power plant; said bonds to be issued at an annual rate of interest of 4½ per cent.

The revenues of the city, except for small sums acquired by it from fines and forfeitures, are derived from taxation. The taxes consist of an annual tax of 1 per cent. on the real and personal property in the city subject to taxation, and from licenses. Of the tax of 1 per cent. above referred to, one-half of 1 per cent. is levied for the general purposes of the city, and the other one-half of 1 per centum is levied pursuant to section 216 of the Constitution, which provides, among other things:

That "such special tax to be applied exclusively to the payment of interest on bonds of said cities of Birmingham, Huntsville and Bessemer, and the town of Andalusia, respectively, heretofore issued in pursuance of law, or now authorized by law to be issued, and for a sinking fund to pay off said bonds at the maturity thereof."

That, although the taxes had been levied and collected for the purposes for which they might be levied and collected, the commissioners of the city of Birmingham have from time to time used the proceeds of such one-half of 1 per centum for the purpose of paying interest on bonds of the city, regardless of whether such bonds were issued before or since the adoption of the Constitution of 1901. At the time of the adoption of the Constitution of 1901, there had been enacted an act entitled "An act to authorize the city of Birmingham * * * to buy, build, direct and own, maintain and operate waterworks for the supply of said city * * * and to issue and sell, or exchange said bonds for said purposes," approved February 23, 1899 (found in the Local Laws of Jefferson County, p. 259), and which said act authorized the issuance of the $1,000,000 of bonds. It is averred that the bonds authorized to be issued by said act have in fact never been issued. That the general revenues of the city exclusive of those derived from the said one-half of 1 per centum just referred to are not sufficient to pay the ordinary expenses of the city, including the interest on its bonds; and also including the interest on the $3,000,000 of bonds above referred to as having been authorized by the election of June 5, 1916.

It is also averred: That the defendants do not expect and propose to pay the interest on the bonds to be issued for the purpose of acquiring an electric light plant and an auditorium out of the revenues to be derived from the operation of the same, but they threaten and propose to pay the interest on such bonds, as well as the interest on the said $2,000,000 of bonds to be issued for the purpose of acquiring school property, out of the special tax of one-half of 1 per centum authorized by section 216 of the Constitution for the special purposes therein provided;

and, in so proposing, the defendants propose to thwart the plain mandates of the Constitution of the state, and to divert the revenues derived from taxation to purposes for which the collection of such revenues were unauthorized. There is no source from which the interest on said $3,000,000 of bonds can be derived, except from the proceeds of such special tax. That the defendants propose to issue the $3,000,000 of bonds, as voted on June 5, 1916, and will do so unless restrained by the injunctive process of this court. It is further averred that they propose to assert and represent to the prospective purchasers of such bonds that the interest thereon will be paid out of the proceeds of such special tax above referred to, and that, if negotiated and sold, such bonds will be bought by the purchasers thereof relying upon the expectation that the interest thereon will be paid out of such special tax, and that they will claim, if, as a fact, the interest cannot be so paid out of such taxes legally, that nevertheless the city and the taxpayers are estopped from contending that such special tax cannot be used for such special purposes; that said bonds will be negotiable, and orator will have no practical means of preventing the payment of interest on said bonds out of such special tax. The bill further charges that such diversion of said special tax of one-half of 1 per centum constitutes a wrong on the part of defendants, to remedy which complainant has no adequate remedy at law, and as against which he is entitled to injunctive process.

The answer admits the averments of paragraphs 1 and 2 of the bill. It is also admitted that the revenues of the city are derived mainly from taxation—as alleged in paragraph 3 of the bill—and from licenses; that the tax of one-half of 1 per centum is levied pursuant to section 216 of the Constitution, but it is denied that all of the pertinent provisions of said section are quoted. It is further denied that said special tax is levied under the exclusive authority of said section 216, but, on the contrary, said additional tax of one-half of 1 per centum is authorized to be levied, and is levied in fact, under the provisions of an act of the Legislature entitled "An act to establish a new charter for the city of Birmingham, Alabama," approved February 23, 1899. Loc. Laws 1898–99, p. 1391.

It is admitted that the commissioners of the city of Birmingham have used the proceeds of such tax of one-half of 1 per centum from time to time for the purpose of paying interest on bonds of the city, regardless of whether such bonds were issued before or since the adoption of the Constitution of 1901, and that this practice has been continuously indulged in by each administration since the enactment of the above-mentioned statute, and that the practice is a lawful one.

It is further averred that the general revenues of the city, exclusive of such special tax, are not sufficient to pay the ordinary expenses of the municipality, including. the interest on its bonds issued since the adoption of the Constitution of 1901, and also insufficient to pay such expenses and interest on bonds issued since 1901 including the interest on the $3,000,000 of bonds authorized by the election of June 5, 1916. The answer then avers that it is not true the respondents are under any obligation, in law or fact, to apply the revenues derived from the special tax of one-half of 1 per centum exclusively to the payment of the interest upon and the creation of a sinking fund for the benefit of the bonds issued prior to the adoption of the Constitution of 1901; but, on the contrary, it is lawful and proper to apply the proceeds of such special tax to the payment of the interest on bonds issued since the adoption of the Constitution of 1901, as well as prior thereto; and in so using the proceeds of said tax, the general revenues of the city will be sufficient to pay the ordinary expenses of the municipality, and the proceeds of such special tax will be sufficient to pay the interest upon the $3,000,000 of bonds authorized by the election of June 5, 1916.

It is also averred that the respondents expect the proceeds from the light plant and the auditorium to make the same self-sustaining, and to pay the interest on these bonds out of the operative revenues derived therefrom, but that respondents contemplate the payment of the interest on the $2,000,000 of bonds to be issued for school purposes out of the special tax of one-half of 1 per centum above referred to, which it is claimed is lawful and right. It is then averred that the validity of said bond issues authorized by the election of June 5, 1916, is not affected by the source from which it is expected that the interest thereon will be paid, and that, so far as the legality of said issues are concerned, it is immaterial from what portion of its revenues the interest will be paid; and, further, that said bonds having been duly authorized by the vote of the people will be a binding obligation to the city, and will be lawful; that complainant is without right to challenge the validity of said issues upon such hypothesis, as set up in the bill.

The answer further discloses that at the present time the revenue of the city is sufficient to meet its current expenses, but that prior to September 30, 1916, the current revenue was not sufficient and had not been for many years; that on September 30, 1911, there was an issuance of $1,000,000 of bonds to meet a portion of the current expenses of the city in excess of its revenues theretofore incurred. Said deficit was not incurred for a single year, but represented an accumulation of deficits for a series of years. On July 1, 1915, bond issues aggregating $1,250,-000 were necessary to be issued for a like purpose.

It is further averred that by an act approved August 28, 1915 (Acts 1915, p. 320) the governing authorities of the city of Birmingham were required to adopt a budget out of the estimated receipts and expenditures of the city for the year, and that, in compliance therewith, the authorities did adopt a budget of the estimated receipts and expenditures for the current year, and have conducted the affairs of the city within such estimated receipts. But to accomplish this end, it has become necessary to restrict and limit appropriations for public health, to withdraw all direct appropriations for charity, reduce appropriations for police and fire protection, and numerous other matters—not necessary to further enumerate—including public school systems.

It is admitted that the city has collected the special tax of one-half of 1 per centum since the year 1899, but it is denied that the amount collected has been sufficient to pay the interest on all bonds outstanding prior to the adoption of the Constitution, as well as provide a sinking fund sufficient to pay in full the bonds of the city issued prior to the adoption of the Constitution of 1901. It is further denied that it is no longer necessary to levy and collect such special tax.

In paragraph 8 it is averred that on the 16th of February, 1897 (see Laws 1896–97, p. 1202), the Legislature submitted to the vote of the people a proposed amendment to the Constitution known as the Birmingham Amendment, and set out in the opinion. Said amendment was voted on in August, 1898, carried by the people, and immediately proclaimed to be adopted by the Governor, from which time the same became a part of the Constitution. It is then averred that on February 23, 1899 (Loc. Laws 1898–99, p. 1391), the Legislature interpreted this constitutional amendment in an act putting the same into effect—the pertinent provisions of which appear in the opinion. In pursuance of such interpretation by the Legislature, the mayor and board of aldermen of the city of Birmingham, who then constituted its legal authorities, on July 25, 1900, and August 25, 1900, issued bonds for the purpose of funding past-due coupons to the amount of $269,000, bearing interest at the rate of 5 per cent. per annum. And, in like manner, in pursuance to the same authority, numerous bonds were issued which are enumerated in said paragraph 8. It is then averred that the said authorities of the city of Birmingham had levied and collected said special tax, and applied the same indiscriminately to the payment of interest upon bonds issued after the adoption of the amendment of 1898, as well as to the payment of the interest on bonds issued prior thereto; that with full knowledge of the enactment of the act of the Legislature of 1899, and of the issuance of

the bonds thereunder, and of the practice of the city in paying the interest on said bonds issued subsequent to the adoption of said amendment to said Constitution, as well as to the payment of interest on bonds issued prior thereto, the constitutional convention of 1901 did re-enact and readopt the provisions of the amendment of 1898 without change, except as hereinafter referred to; that the practical effect of the re-enactment of the amendment of 1898 by the constitutional convention of 1901, after the practical construction thereof by the act of the Legislature on February 23, 1899, and by the administrative officials of Birmingham charged with the enforcement thereof, was in law and in fact an approval of and a ratification of the interpretation so placed upon the amendment by the Legislature and by such administrative officials.

It is then averred that the only material change by the provisions of the Constitution of 1901 in the amendment of 1898 was by the insertion of the words "or now authorized by law to be issued"; and that the convention intended by the use of such additional words to strengthen and confirm the interpretation placed thereon by the Legislature, as above referred to. In paragraph 9 it is averred that, without reference to the express language of the amendment of 1898, the quoted provisions of section 216 of the Constitution of 1901, when considered in connection with other provisions of the same section and all other sections of the same Constitution, expressly authorize and validate the practice indulged in by this and all preceding administrations of the city since the adoption of said Constitution, in the matter of paying interest on the bonds thereafter issued out of such special tax; and that the language "or now authorized by law to be issued" had reference to the bonds not merely authorized by act of the Legislature prior thereto, but also to bonds authorized to be issued by sections 222, 223, and 225 of the Constitution.

The answer then quotes section 225 of the Constitution, and it is averred that, by said constitutional provision, the city of Birmingham was authorized to become indebted not exceeding 7 per cent. of the assessed valuation of the property therein, exclusive of temporary loans or obligations already issued for the purpose of acquiring schoolhouses, waterworks and sewage; and that the authorized additional tax of one-half of 1 per centum was used for the purposes as therein stated, and for bonds then authorized by law, including debts in the form of bonds authorized to be incurred by the provisions of section 225 of the Constitution.

It is then averred that since the adoption of the Constitution of 1901, each succeeding administration has, through its executive officers, construed the Constitution so as to authorize and permit the payment of interest out of said special tax on bonds issued since that date. Then follows an enumeration of the bonds issued by the city since 1901—the interest on which was paid out of said special tax.

Section 11 has reference to the municipalities which were by legislative enactment allowed to be annexed to the city of Birmingham, and the special taxes and debts in relation to said city, all of which are without any bearing on the result here.

As an amendment to the answer, respondents have filed paragraph 9½, in which the act of February 23, 1899, is again referred to. It is averred that by said act the city of Birmingham was authorized and required to carry on certain works of public improvement which required a large expenditure of money, and to discharge which the provisions made by the Constitution and laws of Alabama for raising money by taxation were entirely inadequate and insufficient, and that it would be impossible to carry out the powers conferred, or discharge the duties imposed under the charter, without borrowing money for the purpose of paying for the cost of real estate, buildings, and improvements—some of which the city of Birmingham under its charter was authorized to provide for public purposes. Then is enumerated the various duties of the city, and its varying authorities in regard to public health, schools, streets, and the exercise of the power of eminent domain, which need not be here set out. It is then averred that by said charter, the city was authorized to issue bonds to pay off any outstanding coupons of the municipality (an enumeration of the bonds of the city then outstanding is attached as an exhibit to the answer). It is further alleged that the power of the city to borrow money for the purpose of paying for the costs of improvements contemplated by the charter was implied from the express powers granted by said charter, for the reason that the ordinary revenues were insufficient to furnish the necessary funds to carry out the imposed powers, and discharge said duties, and that neither said powers nor said duties could be discharged without borrowing money; that the city had a right under the act of 1899, and the Constitution of 1901, to issue bonds to secure the repayment of money so borrowed for such purposes, and that the implied power to borrow money and issue bonds furnishes complete and ample authority for the issuance of all additional bonds by the city subsequent to the adoption of the Constitution of 1901; and that the bonds issued since the adoption of the Constitution of 1901 were, as shown by Exhibit A, bonds which were authorized to be issued within the meaning of section 216 of the Constitution. It is further averred that all bonds issued pursuant to the charter powers, in connection with specific legislative authority enacted prior to January, 1901, are plainly

within the protection afforded by section 216 of the Constitution. Respondents aver that the following issues of bonds were not only authorized by the provisions of said charter, including the act of February 25, 1903 (Laws 1903, p. 59), but also the general bonding acts of 1909 (Laws 1909, p. 188) and 1915 (Laws 1915, p. 110) furnish additional machinery for securing the vote of the people for the issuance of the bonds subsequent to the adoption of the Constitution. Then follows an enumeration of bonds issued in the years 1904, 1906, and 1908. The answer then discloses that in the year 1909 bonds to the amount of $350,000 were issued for the purpose of building schools, the issuance of which were absolutely necessary in order to provide the money therefor; that in the year 1910, $400,000 of bonds were issued, after the same had been authorized by a vote of the people, for the purpose of paying off the floating debt of the municipalities annexed to the city of Birmingham. Numerous other issuances of bonds are then enumerated, which need not be here set forth.

Upon submission of the cause on motion of complainant for a preliminary injunction, the court below denied the injunction as to the issuance of the bonds of $3,000,000 authorized by the vote of the people on June 5, 1916, but granted relief as to the use of the proceeds of the special tax of one-half of 1 per centum authorized by section 216 of the Constitution. The portion of the decree which forms the basis of this appeal recites as follows:

"It is further ordered that upon the complainant entering into bond in the sum of $5,000 conditioned as required by law, and with the sureties to be approved by the clerk and register of this court, the clerk and register of this court shall issue a writ of injunction restraining and enjoining the respondents, until the further orders of this court, from using any portion of the taxes collected by the city of Birmingham from the special tax of one-half of 1 per centum which it is authorized to levy and collect by section 216 of the Constitution, otherwise than for the payment of the interest on bonds of the city of Birmingham issued prior to the adoption of the Constitution of 1901, and such as were then expressly authorized to be issued by some act or acts of the Legislature or the General Assembly of Alabama, including bonds heretofore issued and bonds which may hereafter be issued to procure means to pay for street and sidewalk improvements and sanitary or storm water sewers, the cost of which has been or may hereafter be assessed in whole or in part against the property abutting said improvements, or drained by such sanitary or storm water sewers, and for a sinking fund to pay off such bonds at the maturity thereof, and for the payment of interest on, and for a sinking fund for, any bonds which have been or which may hereafter be issued for the purpose of funding or refunding any bonds hereinabove mentioned as bonds to which such special tax may be applied: Provided that such part of such special tax as has been or may hereafter be levied and collected from property situated within what were the corporate limits of the towns of Ensley, Pratt City, Wylam, Avondale and Woodlawn, at the time of their consolidation with or annexation to the city of Birmingham, may be applied to the purposes stated in the call for the special elections held by said towns for the purpose of ascertaining whether said tax should be levied."

This cause was submitted with three copies of the record under new rule 46 (178 Ala. xix, 65 South. vii).

M. M. Ullman and Cabaniss & Bowie, all of Birmingham, and John C. Thomson, of New York City, for appellants. Percy, Benners & Burr, of Birmingham, for appellee.

GARDNER, J. Appellee (complainant in the court below) sought injunction of the city authorities of Birmingham against the issuance of $3,000,000 of bonds of the city authorized by an election held June 5, 1916, and also against the diversion of the special tax of one-half of 1 per centum, which Birmingham, with other municipalities, is empowered to levy by virtue of the provisions of section 216 of the present Constitution. Relief as against the issuance of the $3,000,000 of bonds of the city was denied, but the temporary injunction was issued restraining the city authorities "from using any portion of the taxes collected by the city of Birmingham from the special tax of one-half of 1 per centum which it is authorized to levy and collect by section 216 of the Constitution, otherwise than for the payment of the interest on bonds of the city of Birmingham issued prior to the adoption of the Constitution of 1901, and such as were then expressly authorized to be issued by some act or acts of the Legislature or the General Assembly of Alabama," and including certain classes of bonds not here involved.

The answer admits that the special tax of one-half of 1 per centum, authorized by said section 216 of the Constitution, has been devoted to the payment of the interest on bonds, and the creation of a sinking fund for the payment of the principal thereof, whether said bonds were issued before or after the adoption of the Constitution of 1901, and it is insisted that such application of the proceeds of said special tax is entirely lawful. It therefore appears that the proper application of the proceeds of the special tax of one-half of 1 per centum authorized to be collected by the city of Birmingham, and other municipalities therein named, is the sole question for determination here; and in view of the wide range assumed in the able and ingenuous argument of counsel for appellant, we prefer to confine ourselves strictly to the question as thus presented by this record. That portion of section 216 of our present Constitution here pertinent reads as follows:

"No city, town, village or other municipal corporation, other than as provided in this article, shall levy or collect a higher rate of taxation in any one year on the property situated therein than one-half of one per centum of the value of such property as assessed for state taxation during the preceding year; * * * and provided further, that this section shall not apply to the cities of Birmingham, Huntsville and Bessemer, and the town of Andalusia, which cities and town may levy and collect a tax not

201 ALA.—16

to exceed one-half of one per centum in addition to the tax of one-half of one per centum as hereinbefore allowed to be levied and collected, such special tax to be applied exclusively to the payment of interest on bonds of said cities of Birmingham, Huntsville and Bessemer, and town of Andalusia, respectively, heretofore issued in pursuance of law, or now authorized by law to be issued, and for a sinking fund to pay off said bonds at the maturity thereof."

The provision above quoted, referable to the city of Birmingham, is but an adaptation of an amendment to the Constitution of 1875, commonly known as the "Birmingham Amendment," adopted by the voters of the state in the election of August, 1898. The amendment was an addition to section 7, article 11, of the Constitution of 1875, and was as follows:

"And provided further, that this section shall not apply to the city of Birmingham, which city may levy and collect a tax not exceeding one-half of one per cent. in addition to the tax of one-half of one per centum hereinabove allowed to be levied and collected, such special tax to be applied exclusively to the payment of interest on the bonds of the said city of Birmingham heretofore issued by said city in pursuance of law, and for a sinking fund to pay off said bonds at the maturity thereof."

The Legislature of 1898–99 passed two acts, amending Birmingham's charter, concerning the question of taxation; the first of which was passed December 13, 1898, and was in strict conformity with the constitutional provision above referred to as the Birmingham Amendment. The act follows the language of the constitutional amendment, fixing a heavy penalty for the diversion of funds of the special tax for any other purposes than those authorized and required by the statute. Local Laws of Jefferson County, pp. 272, 273. The portion of said act here important reads as follows:

"And the said mayor and aldermen shall have the power to assess, levy and collect taxes on all property in said city for each year, not exceeding one-half of one per centum on the value of said property as assessed for the state taxation the preceding year: Provided, that the said mayor and aldermen shall have the power in like manner to assess, levy and collect a tax not exceeding one-half of one per centum in addition to the tax of one-half of one per centum hereinabove authorized to be levied and collected, to be applied exclusively to the payment of the interest on the bonds of said city heretofore issued in pursuance of law, and for a sinking fund to pay off said bonds at the maturity thereof."

"Sec. 24. That the mayor and aldermen of said city are hereby authorized and required to establish a sinking fund to pay off the bonds heretofore issued by said city in pursuance of law, at the maturity thereof; and they shall appropriate to said fund all moneys arising from the special tax hereinabove authorized to be collected for the payment of the bonds of said city, which shall not be necessary for the payment of the interest on said bonds. · And the mayor and aldermen are hereby authorized and directed to invest said sinking fund in the purchase of the bonds of said city of Birmingham: Provided, that the same can be bought at a price satisfactory to the said board of mayor and aldermen, and if said bonds cannot be so bought, said sinking fund shall be invested in the bonds of the United States of America, or in bonds of the state of Alabama, or in the bonds of the

county of Jefferson, in the state of Alabama, by said board of mayor and aldermen. And the application or use of any of the moneys collected for the payment of the interest or principal of said bonds as hereinabove provided, for any other purpose than that authorized and required by this act, shall be deemed a felony, and the person guilty thereof, whether he be the mayor of said city, or any alderman so voting, or the treasurer, collector, custodian, agent or servant of the board, must on conviction be imprisoned in the penitentiary for not more than five years, and may be fined not more than one thousand dollars."

On February 23, 1899, the Legislature passed another act (Local Laws of Jefferson County, p. 171) entitled "An act to establish a new charter for the city of Birmingham, Alabama." Section 42 of said act reads as follows:

"Be it further enacted, that the board of mayor and aldermen shall have the power in like manner to assess, levy and collect a tax not exceeding one-half of one per cent. in addition to the tax of one-half of one per cent. in the next preceding section authorized to be levied and collected, to be applied exclusively to the payment of the interest on the bonds of said city heretofore issued in pursuance of law, and which may hereafter be issued in pursuance of law, to take up or refund the outstanding coupons of said bonds, and for a sinking fund to pay off said bonds at the maturity thereof, and no part of the funds raised under the provision of this section shall be applied to any purpose whatsoever other than is indicated by this section."

Section 46 of the same act authorizes and requires the establishment of a sinking fund to pay off the bonds "heretofore" issued by the city, or any bonds that may "hereafter" be issued by the city. It will thus be seen that section 42 of the act of February 23, 1899, provides that the special tax may be devoted to paying the interest on bonds "which may hereafter be issued in pursuance of law," as well as to paying the interest on bonds "heretofore" issued. On February 23, 1899, the Legislature passed an act entitled "An act to authorize the city of Birmingham * * * to buy, build, direct and own, maintain and operate waterworks for the supply of said city * * * and to issue and sell or exchange said bonds for said purposes." Local Laws of Jefferson County, p. 259. Section 4 of this act authorizes the issuance of bonds for the purpose of carrying out the provisions of the act by the city of Birmingham in the sum of $1,000,000. These bonds have never been issued. At the time, therefore, of the adoption of the Constitution of 1901, this act was in full force and effect authorizing the issuance of $1,000,000 of bonds for the city of Birmingham for the erection and operation of a waterworks plant. It is seen that the above-quoted provision of section 216 of the Constitution is a substantial copy of what is known as the Birmingham Amendment, with the exception that in the Constitution of 1901 following the words "heretofore issued in pursuance of law" the following words are added, "or now authorized by law to be issued."

Appellants insist that when reference is had to section 222 of the Constitution, which authorizes the Legislature to pass general laws, giving authority to municipalities to issue bonds upon an election of the people, and in connection with the provisions of section 225 of the Constitution, which authorizes all towns and cities having a population of 6,000 or more, as well as other cities therein named, to become indebted in an amount, including present indebtedness, not exceeding 7 per cent. of the assessed valuation of the property therein, with certain other provisions not necessary to here mention, that the words of section 216 "or now authorized by law to be issued" suffice to include the issuance of bonds subsequent to the Constitution of 1901, under the authorization of sections 222 and 225, although there was no legislative act authorizing the issuance of such bonds at the time of the adoption of the Constitution.

[1] We cannot agree to this contention. Prior to the adoption of the Constitution of 1901, the issuance of municipal bonds was not authorized by general laws, but by special legislative enactments. Mayor v. Wetumpka, 63 Ala. 627; Simpson v. Lauderdale County, 56 Ala. 64; Allen v. La Fayette, 89 Ala. 645, 8 South. 30, 9 L. R. A. 497. Section 222 of the Constitution merely directed in effect the passage of the general laws by the Legislature for the issuance of municipal bonds, and such general laws were passed by the next Legislature, being found in section 1421 et seq. of the Code. We cannot agree to the insistence that the provisions of section 222, which merely formed a foundation for a scheme of laws to be thereafter enacted for the authorization of the issuance of municipal bonds, could by any rules of construction be held to include bonds "now authorized to be issued" at the time of the adoption of the Constitution.

We think the word "authorized" in section 225 of the Constitution means, when considered in connection with the context, "permitted," and that this section was for the purpose of placing a limitation upon the indebtedness of municipalities with reference to the assessed valuation of the real and personal property. Section 216 was to impose a limitation on the taxation of the real and personal property. Each of these sections have a different field of operation, and to adopt the meaning contended for by the appellants would result in holding that the words "now authorized by law to be issued," in section 216, have direct reference to the words "are hereby authorized to become indebted," found in section 225 of the Constitution, and would result in holding that the $3,000,000 of bonds authorized by the election of June 5, 1916, and referred to in the bill, was embraced within the meaning of the words "now authorized by law to be issued" in section 216 of the Constitution

of 1901. In short, the argument would lead to the assertion that bonds actually authorized to be issued 15 years after the adoption of the Constitution of 1901, under laws passed subsequent thereto, come within the class designated in the Constitution of 1901 as "now authorized by law." We cannot subscribe to so strained a construction.

Section 216 followed the language of the Birmingham Amendment of 1898, and specifically required that the proceeds of this special tax of one-half of 1 per centum should be applied to the payment of the interest on bonds, and a sinking fund for the payment of the principal thereof theretofore issued. Said section made use of the additional words "or now authorized by law to be issued," which were clearly inserted so as to protect the issuance of the bonds for the erection and operation of the waterworks plant authorized to be issued by the act of February 23, 1899, and which at the time had not been issued.

[2] It is further insisted that the bonds issued subsequent to the Constitution of 1901 were issued pursuant to the authority of section 42 of the act of February 23, 1899, above quoted, which authorized that the proceeds of this special tax should be devoted not only to bonds "heretofore issued," but to those which "may be hereafter issued"; and that succeeding administrations have, under the authority of that act, issued a large amount of bonds, which are set out and enumerated in the answer. And that, therefore, there has been both legislative and executive construction upon section 216 of the Constitution, which, having been so long followed should now be acquiesced in by the courts, and held of binding force. This argument is of course based upon the theory of contemporaneous construction referred to in the authorities. In United States v. Hermanos y Compania, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821, the court said:

"We have said that when the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution. * * * And we have decided that the re-enactment by Congress, without change, of a statute, which had previously received long-continued executive construction, is an adoption by Congress of such construction."

We are also cited to the following language in Pennoyer v. McConnaughy, 140 U. S. 23, 11 Sup. Ct. 706, 35 L. Ed. 363:

"The principle that the contemporaneous construction of a statute by the executive officers of the government, whose duty it is to execute it, is entitled to great respect, and should ordinarily control the construction of the statute by the courts, is so firmly imbedded in our jurisprudence, that no authorities need be cited to support it. On the faith of a construction thus adopted, rights of property grow up which ought not to be ruthlessly swept aside, unless some great public measure, benefit or right is involved, or unless the construction itself is manifestly incorrect."

The question of contemporaneous construction has also received consideration by this court. Ex parte Hardy, 68 Ala. 303; Ex parte Selma & Gulf R. R. Co., 45 Ala. 696, 6 Am. Rep. 722; Moog v. Randolph, 77 Ala. 597.

It may be seriously questioned that the principle here insisted upon by counsel for appellant has application to the situation as here presented. The provisions of the Constitution referred to as the Birmingham Amendment give no room for doubt or uncertainty in regard to the application of the proceeds of this special tax of one-half of 1 per centum, and left nothing to be construed by the Legislature. The act of February 23, 1899, authorizing the proceeds to be applied also to the payment of the interest on bonds issued "hereafter" as well as "heretofore," was plainly in the teeth of this constitutional amendment, and violative thereof, and could in no manner be considered as a legislative construction. Just previous thereto, the Legislature had passed an act which dealt solely with the question of taxation, and in providing as to the distribution of the proceeds of this special tax followed the language of the Birmingham Amendment, requiring the same to be applied exclusively to bonds "heretofore" issued. There is no more reason for the insistence that the act of February 23, 1899, was a legislative construction of the Birmingham Amendment to the Constitution than was the act of December 13, 1898.

[3] It may also be doubted that the situation here presented is brought within the doctrine, as contended for by the appellants, known as executive construction. This doctrine has been given effect in some of the authorities because of the fact that the department of government charged with its execution has placed upon a statute of doubtful meaning a certain construction, which has been followed from time to time. It may also be questioned that the municipality in the instant case was charged, within the meaning of the doctrine here insisted upon, with the execution of any of the provisions of section 216 of the Constitution, but rather the language of said section, in so far as the distribution of the proceeds of the special tax was concerned, was prohibitive, and the municipality was charged more with its obedience than with its execution.

[4] But, aside from these considerations, and even conceding for the purposes of this case that the doctrine contended for could, under ordinary circumstances, find application, we are yet of the opinion it could not be here given effect for still another reason. The authorities cited by counsel for appellant disclose that the principle has been applied when the meaning of the statute was doubtful. United States v. Hermanos y Compania, supra. Upon this question the following language from Cooley's Constitutional Limitations (7th Ed., p. 105) is pertinent:

"Where, however, no ambiguity or doubt appears in the law, we think the same rule obtains here as in other cases, that the court should confine its attention to the law, and not allow extrinsic circumstances to introduce a difficulty where the language is plain. To allow force to a practical construction ·in such a case would be to suffer manifest perversions to defeat the evident purpose of the lawmakers. 'Contemporary construction * * * can never abrogate the text; it ·can never fritter away its obvious sense: it can never narrow down its true· limitations; it can never enlarge its natural boundaries.' "

We are of the opinion that the pertinent provisions of section 216, above referred to, in regard to this special tax of one-half of 1 per centum, are plain and clear, and the language is unambiguous as to the words "heretofore issued in pursuance of law." As to this, there can of course be no doubt, and in the light of the act then existing, authorizing the issuance of the $1,000,000 of bonds for the waterworks plant for the city of Birmingham, which had not been issued, we think the language "or now authorized by law to be issued" is equally plain and unambiguous, and no room is left for legislative or executive construction. We entertain no doubt as to its meaning, and therefore the principles invoked can have no application. As said by this court in State ex rel. Little v. Foster, 130 Ala. 154, 30 South. 477:

"The framers of the Constitution 'must be understood to have intended what they said. * * * We can only learn what they intended, from what they have said. It is theirs to command, ours to obey. When their language is plain, no discretion is left to us. We have no right to stray into the mazes of conjecture, or to search for imaginary purposes.' "

[5] We are reminded in brief of counsel for appellant, as we were also in the oral argument upon the submission of the cause, of the great importance of the decision in this case, and the serious consequences that will result to the city of Birmingham, and the embarrassment to follow in its fiscal affairs. Deliberate consideration has been given to the elaborate and forceful argument of counsel for appellant. With these consequences we cannot here be concerned, and, although we may reach the conclusion with some reluctance, yet it is of course our plain duty to declare the law. In this connection the following quotation adopted by this court in Sadler v. Langham, 34 Ala. 311, is appropriate:

"It is highly probable that inconveniences will result from following the Constitution as it is written. But that consideration can have no weight with me. It is not for us, but for those who made the instrument, to supply its defects. If the Legislature or the courts may take that office on themselves, or if under color of construction, or upon any other specious ground, they may depart from that which is plainly declared, the people may well despair of ever being able to set a boundary to the powers of the government. Written Constitutions will be more than useless."

We are persuaded the decree of the court below was correct, and it results that it will be here affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.