## COVINGTON COUNTY, ALA., v. STEVENS.

## STEVENS v. COVINGTON COUNTY, ALA.

(Circuit Court of Appeals, Fifth Circuit.   March 5, 1919.)

### No. 3156.

1. **COURTS** ⬦➡363—FOLLOWING STATE LAW—ACTIONS AGAINST COUNTY—PRIOR PRESENTATION OF CLAIM.

   A state law requiring claims against a county to be presented to the county board before suit may be maintained thereon is reasonable and valid, and will be recognized and enforced by a federal court unless the county board has taken action which was equivalent to rejection of the claim, and rendered its presentation unnecessary and futile.

2. **COUNTIES** ⬦➡197—ACTIONS AGAINST—PRESENTATION OF CLAIM TO COUNTY BOARD.

   A claim for attorney's fees, based on an injunction bond given by a county in a suit in which it was defeated, need not be presented to the county board; such fees, if recoverable, being an incident to litigation begun by the county.

3. **COUNTIES** ⬦➡201—CLAIMS AGAINST—PRESENTATION.

   Presentation to a county board of a claim for a stated sum as "actual and exemplary damages" for an alleged libelous suit does not meet the requirement of a statute requiring an itemized statement.

4. **COUNTIES** ⬦➡206(1)—CLAIMS AGAINST—CONCLUSIVENESS OF ALLOWANCE.

   Under the law of Alabama a county may maintain a suit to have a claim against it allowed by the county board, which claim has not been substituted by a new character of county obligation, declared invalid, and a decision against it in such suit is an adjudication of the validity of the claim.

5. **INJUNCTION** ⬦➡252(6)—LIABILITY ON BOND—ENFORCEMENT IN INJUNCTION SUIT.

   Judgment may be given on an injunction bond for damages proved, arising from the issuance in the case of a preliminary injunction, which is dissolved, but attorney's fees and other expenses incident to the suit are not allowable in a federal court.

6. **SET-OFF AND COUNTERCLAIM** ⬦➡34(2)—COUNTERCLAIM—LIBEL BASED ON PLAINTIFF'S PLEADINGS.

   Damages for libel based upon the allegations of the pleadings in a suit in equity in a federal court cannot be set up by way of counterclaim

7. **COUNTIES** ⬦➡141—LIABILITY FOR TORTS—LIBEL.

   A county cannot be held for damages for libel.

Appeal and Cross-Appeal from the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

Suit in equity by Covington County, Ala., against W. L. Stevens. From the decree, both parties appeal.   Affirmed in part, and reversed in part.

November 10, 1914, W. L. Stevens made a contract with the board of revenue of Covington county, Ala., by which he was to be employed as architect

⬦➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for a new courthouse. He agreed to prepare all general and detail drawings and specifications and do all things necessary and usual in the planning and supervision of construction. His services were to begin at once, and he was to complete drawings and specifications so that the contract might be awarded not later than November 30, 1914. He was to attend to all advertising, to assist in opening bids and awarding the contract, to supervise construction, and to keep, at his expense, on the building a competent superintendent at all important stages of construction. The contract provided: "For the faithful and proper performance of this contract, the party of the second part shall pay to the party of the first part a commission of 5 per cent. of the contract price of the work, three-fifths of which shall be paid at the time of letting the contract, by warrants on the county treasurer of Covington county, Ala., bearing interest at the rate of 6 per cent. per annum, and the balance of two-fifths of which amount as the work progresses."

On November 30th, the board met to receive bids, but did not award the contract. On the 1st day of December the time was extended until the 5th. On the 5th, E. R. Merrill filed a bill of complaint in the chancery court against the board and Stevens, praying that they be restrained from accepting any bids on December 5th. A temporary injunction was granted. After service of the writ, the board, on the 24th of December, entered into a contract with the Falls City Construction Company.

On the 1st of January, Merrill amended his bill, setting up the facts with reference to the violation of the injunction, making the Falls City Construction Company a party, and praying that it be restrained from further proceeding under its contract. The injunction, granted in accordance with the prayer, having been disobeyed, proceedings in contempt were begun, and, the matter reaching the Supreme Court of Alabama, the court issuing the injunction was held to have been without jurisdiction.

On the 1st of January, 1915, the terms of office of the members of the board of revenue expired, and a new board was inducted into office. Prior to the expiration of the term of the old board, a treasurer's warrant was issued to Stevens for an amount equal to 3 per cent. of $139,500, this being the amount of the maximum bid of the Little-Cleckler Construction Company. This warrant had a marginal note to the effect that it was payable in February, 1916. The warrant drew interest at 6 per cent. The chairman of the board of revenue refusing to sign the warrant, it was signed by the other members of the board. The new board passed resolutions declaring the contract with Stevens and the contract with the Falls City Construction Company void, and took steps to let a new contract.

On June 21, 1915, the county instituted in the equity court of the Southeastern chancery division of Alabama a suit against the Falls City Construction Company, W. L. Stevens, W. H. Johnson, and M. C. Gantt. Gantt was alleged to be a resident of the county of Covington, Ala. The bill recited facts hereinbefore set out, and made further allegations to the effect that Stevens was, at the time he became employed by the county and afterwards, working to secure the contract for the Falls City Construction Company. Allegations were also made to the effect that the plans and specifications were not completed in time; that there were conflicting provisions in the specifications; that the terms of the specifications were indefinite; that no person could safely bid, except by adding amounts which might be required from one construction of the plans and specifications as distinguished from another, the interpretation being in Stevens; that the plans were inadequately advertised; that there was an intentional suppression of the fact that the building was to be constructed; that no sufficient time was given for contractors to figure upon the building; that Stevens sent out to prospective bidders what purported to be bids by contractors upon certain parts of the work, the amounts being excessive; that he furnished to certain bidders sheets, showing that the building was to be of a steel frame, the bid of the Falls City Construction Company being based upon concrete frame; and making other allegations questioning the good faith and proper performance of his duty by Stevens. There are also allegations to the effect that the contract was not let to the lowest bidder:

that the plans were defective and insufficient; that the Falls City Construction Company had taken forcible possession of the lots upon which the building was to be constructed, and refused to deliver them to the board. There were prayers that the defendants be required to restore the lots, and that they be restrained from interfering with the possession and control of them by complainants; that they be restrained from proceeding to build the courthouse, or in any manner enforcing or attempting to enforce the contract; as against W. L. Stevens, that he be restrained from proceeding with his application for mandamus in the circuit court to compel the president of the board to sign the warrant, and praying for the cancellation of the contract between Stevens and the board. Upon execution of a bond for $10,000, injunctions as prayed for were issued. The injunction as to the Falls City Construction Company was so modified as not to require surrender of the lots.

Upon petition of Falls City Company, Johnson, and Stevens, the case was removed to the United States District Court. Motions to dismiss the suit were filed by the Falls City Company and by Stevens on July 19, 1915.

On August 15, 1915, an agreement of settlement was made, signed by attorneys for all the parties. For Stevens, the agreement was "executed by his attorneys of record, Parks & Prestwood." The agreement saved all claims and rights of Stevens, except "Stevens waives damages on injunction bonds." On September 1st, Stevens, by other attorneys, filed a "motion and objection," objecting to the dismissal of the suit pursuant to the agreement, and denying that he had executed or authorized the execution of the agreement.

On October 23, 1915, Stevens filed an answer and counterclaim. The counterclaim alleged that on the 1st of September, 1915, he filed with the board of revenue of Covington county a petition, and claimed that he had earned under this contract 5 per cent. commission on $144,500, three-fourths of which was to be paid at the time of the letting of the contract by warrants on the county treasurer, bearing interest at 6 per cent., and the remainder during the period of the erection of the courthouse, the total sum amounting to $7,225; also a claim for damages sustained as the result of the county's having filed a bill in the chancery court against him and others, which was removed to the United States District Court, and wherein he was charged with bad faith and fraudulent conduct under his employment, the amount of this actual and exemplary damages being $22,775, the total amount of his claim being $30,000; that he alleged that he had been allowed the sum of $4,198.14 for part of the services rendered, and that the board had delivered to him a 6 per cent. interest-bearing warrant, maturing February 1, 1916, signed by four members of the board, but not by W. S. Simmons, the president; and that, on this account, the warrant had been of no value to him, and that he presents the same to the president again, with the request that it be signed. The counterclaim alleges that the allegations and prayers of this petition to the board were true; that it had been regularly forwarded to the board of revenue by registered mail; that it had been sworn to by him, and that all the formalities of the law had been complied with; and that the board, although having had ample time to determine what action should be taken, failed and refused to take any action whatever. He alleged in his counterclaim the truth of the statements of this petition to the board, and prayed for judgment for the amounts claimed, $7,225 and $22,750. He further alleged that, since the filing of the suit, Covington county had compromised with the Falls City Construction Company by paying them a sum of money to be relieved from the contract; that the company had surrendered possession of the lot upon which the courthouse was to be constructed; that a new contract had been let for the construction of the courthouse at $75,000, and that the county would issue warrants evidencing indebtedness for this amount, payable in 15 years; that the county was creating other indebtedness, the result of which would be to postpone the payment of the debt due him—and prayed that an injunction issue, restraining the board from entering into any contract, or issuing warrants, for the construction of a courthouse, and prayed for a temporary restraining order pending trial. In the alternative to a judgment for the $7,225, he prays that, if the $4,198.14 be held not due, plaintiff county, through the

president of its board of revenue, be required to recognize and sign said warrant, and that the treasurer be required to register the same.

On November 9th, Stevens filed a petition, which was allowed, that he be permitted to withdraw his plea to the jurisdiction and motion to dismiss filed July 9th. On November 12th, plaintiff filed a motion to dismiss its suit in accordance with the agreement of August 13, 1915. The court denied defendant Stevens' motion for injunction pendente lite, and dissolved a temporary restraining order theretofore granted. Plaintiff's motion to dismiss its suit was denied.

The trial judge, upon hearing of the case, acquitted the board of revenue and Stevens of any collusion, corruption, or fraud. Judgment was entered for Stevens for the amount of his warrant, with interest at 6 per cent. from December 5, 1914, and for $3,026.86, balance due on contract on the bid of $144,500. The claim for damages for libel and upon the injunction bond was disallowed. Appeal by county, and cross-appeal by Stevens.

D. M. Powell, of Greenville, Ala. (Powell, Albritton & Albritton, of Andalusia, Ala., on the brief), for appellant and cross-appellee.

G. W. L. Smith, of Brewton, Ala., and R. E. Milling, of New Orleans, La. (Foster, Milling, Saal & Milling, of New Orleans, La., on the brief), for appellee and cross-appellant.

Before WALKER and BATTS, Circuit Judges, and EVANS, District Judge.

BATTS, Circuit judge (after stating the facts as above). *Dismissal.* —The bill in this cause was filed June 21, 1915; the petition to remove was filed July 5th, and on July 19th, the defendant Stevens filed a motion to dismiss the bill for several grounds there indicated. On August 13th, an agreement was entered into, signed by all the parties, the name of Stevens being signed by Parks & Prestwood, as attorneys of record, by which it was agreed that the Falls City Construction Company should receive from the county $10,500 in compromise and settlement of its claim and cancellation of its contract for the construction of the courthouse and surrender the lots. It was agreed that the bills should be dismissed by the county, and it was stipulated that the rights of Stevens with reference to his suit to compel the chairman to sign his warrant, and any claims which he might have against the county, would not be affected. It was, however, agreed that "Stevens waives damages on injunction bonds." Shortly after the execution of this agreement, Stevens undertook to repudiate it, stating that Park & Prestwood had no authority to agree to the dismissal of the suit. At the time of the making of this agreement, the motion above referred to, filed by Stevens on July 19, 1915, asking the court to dismiss the case, was pending. This motion had been signed by Parks and by G. W. L. Smith, who has throughout been the attorney for Stevens. Parks & Prestwood had also represented Stevens in the Merrill suit, and in the mandamus proceeding pending in the state court. The evidence indicates that they were representing Stevens in this case. Parks & Prestwood, as attorneys in the case, had a right to secure the dismissal for which Stevens was at the time praying by a motion on file. It may be, however, they were without authority to bind Stevens to a waiver of damages on injunction bonds, and the ruling of the trial judge is sustained.

[1] *Necessity for Filing Account with the Board of Revenue.*— Complainant contends, with reference to the several items entering into the counterclaim of Stevens, that they cannot be entertained by the court, because not filed with the board of revenue in the manner and under the conditions required by the statute. The contention of the defendant is that these provisions of the Alabama law which require the filing of claims with the county board may regulate the jurisdiction of the state courts, but cannot affect the right of a person having a claim against the county to maintain an action in the federal court. A number of authorities are adduced which are assumed to sustain this proposition. It is, of course, not within the power of the Legislature of any state to deprive the courts of the United States of the powers and jurisdiction which the Constitution and the laws have given them. On the other hand, a state may determine the conditions and circumstances under which its counties may incur liabilities. The counties are administrative units of the state, receive all of their powers from the state, and can incur no liabilities except under the terms and conditions imposed by the laws of the state. County boards are created to administer the financial affairs of the counties; and law have been passed in Alabama, as in most of the states, requiring that claims against the county be presented to such boards, and those bodies given an opportunity of considering and determining the validity of and providing for the payment of them, before suit. Any law which undertakes to limit subsequent action upon claims of this character to a state court would, of course, be in conflict with the rights and powers of the federal courts, and would not be sustained. But the usual, reasonable, and altogether proper regulations, requiring that a claimant against the county should give the county an opportunity of discharging an indebtedness before subjecting the county to the trouble and expense of litigation, will be sustained by the federal courts, as they should be by all courts. Cases which appear to be in conflict with this proposition are those in which, by the issuance of bonds, or other evidences of indebtedness, the county boards have already definitely determined the liability of the county.

The proper application of these principles will not, however, require that futile, foolish things be done. The county is in no position to contend that anything more than the purposes of the law should be accomplished. If any action shall have been taken by the county board which will be equivalent to rejection of the claim, or which make clear that the filing of the claim would be futile, the claimant will be excused from following the forms of the law.

The claims asserted in the counterclaim are as follows:

(1) A claim for 5 per cent. on the amount of the accepted bid for the construction of the courthouse, amounting to $7,225. It is alleged, with reference to this claim, that a warrant for $4,198.14 had already been issued, and that, if its legality be established, the $7,225 is to be correspondingly reduced.

(2) A claim for $1,998 for attorney's fees, based upon the injunction bond given herein.

(3) A claim for $22,775 for damages for libel, based upon allegations in the pleadings in this case.

With reference to the first of these claims, the warrant for $4,198.14 was based upon the action of the board of revenue. No further action by that board, or any other board, was necessary before taking such action as might be required to enforce the claim. The complaint sought to declare illegal the contract on which the warrant was based, and sought to restrain the prosecution by Stevens of a suit to compel the chairman of the board to sign the warrant. This suit of the county was necessarily the result of action by the county board, and would have rendered unnecessary any presentation of the claim, even if it had not already been passed upon.

As to the counterclaim for the balance, there was also a lack of necessity for filing a claim with the county board. It had, prior to that time, passed a resolution to the effect that the contract of Stevens, under which this claim was made, was void. It would not consist with ordinary common sense to require that, under such circumstances, a person should formally present a claim based upon the contract. The contract provided for the payment of this balance as the work progressed; but the contract under which he made the claim, and the contract with the construction company, by which the amount of the claim and the time of payment were to be determined, have both been repudiated by the county. The county by this action rendered itself liable to suit for breach of the contract, subject to such defenses as may be legally made.

[2] With reference to the claim for attorney's fees, the claim is based upon an injunction bond filed in this case. It is an incident to litigation which has been voluntarily entered into by the county. When it chooses to litigate, it must carry all the necessary burdens and risks of litigation. If damages be established against the principal on an injunction bond in an injunction suit, the judgment will as naturally follow as judgment for costs against a losing litigant. There was no necessity for filing the claim with the board.

[3] The claim for damages for libel, based upon the allegations in the bill of complaint in this case was not filed until September, 1916. It was not acted upon by the board of revenue, and 90 days had not elapsed after the mailing of the claim when the counterclaim was filed in October. An amendment to the counterclaim, filed after the expiration of 90 days from the date of the receipt of the claim by the clerk of the county, and alleging that fact, would appear to have the same effect as if the claim had been then for the first time filed as a counterclaim. The claim, however, as presented to the board of revenue, consisting of a single amount for "actual and exemplary damages," can hardly be said to meet the requirement of the statute for an itemized statement.

[4] *The Claim and Warrant for $4,198.14.*—One of the items referred to in defendant's counterclaim is $4,198.14, allowed by the board of revenue December 5, 1914, as 3 per cent. on the gross amount of the Little-Cleckler bid. A warrant was prepared, which was signed by all of the members of the board except the president, who refused to sign.

The resolution under which this warrant was issued provided for payment in February, 1916, and a notation on the warrant showed it payable at that time. The defendant set up that, by reason of the refusal of the president to sign the warrant, he had been unable to register the warrant or use it. He prayed for judgment on the warrant, that the county, through the president of its board of revenue, be compelled to sign the warrant, and that the treasurer of the county be required to register it. He prayed, in the alternative, that he have judgment for the $7,225, which was 5 per cent. on the bid of the Falls City Company as finally accepted. To the demand for judgment on the warrant for $4,-198.14, the plaintiff pleaded that there was no allegation that it was due, and the fact that it was shown not to be due at the time the counterclaim was filed. The obligation, if it be one, matured before the trial, and the amendment filed by defendant May 15, 1917, in a statement of the claim included the item:

"Due by county warrants bearing 6 per cent. interest from December 5, 1914, $4,198.14."

This statement would doubtless be a sufficient allegation that the warrant was due. But the warrant is not executed as required by law, and cannot itself be the basis of a suit. Local Acts of Ala. 1911, pp. 231, 232.

The order of the board of revenue approving the claim is open in the state court to the objection that an allowed claim cannot be sued upon. Suit to require the president to sign the warrant, or to compel the treasurer to register it, might be maintained; but the allowance itself has the force of a judgment, so long as it remains without attack in the proper way.

In the present case, the judgment asked for against the president or the treasurer cannot be given, because neither is a party. It seems, however, that in a suit of this character, in the federal court, judgment can be given for the amount of the claim, notwithstanding it has already been allowed; judgment being an essential prerequisite to mandamus or other executory process. County of Greene v. Daniel, 102 U. S. 187, 26 L. Ed. 99. Again, the answer of defendant to plaintiff's action, wherein it undertakes to nullify the effect of the allowance and the warrant, presents an issue, the determination of which will have substantially the same effect as a suit upon the warrant. If the county fails to nullify the order and warrant by a failure to sustain its charges of fraud and nonperformance of contract, the judgment will necessarily carry the inference of the validity of the claim. If defendant should undertake, by mandamus in the state courts, to enforce his rights, the validity of his claim would be held a thing adjudicated.

That the county may institute suit to cancel an allowed claim, even, where a warrant has been issued, is thoroughly established; and if, in this case, the allegations of its bill are sustained by the evidence, either with reference to fraud or to failure of consideration, judgment canceling the warrant and nullifying the claim would have to be given.

The case of Board of Revenue of Covington County v. Merrill, 193 Ala. 521, 68 South. 971, arising out of the facts involved in this case:

was disposed of by a most able and instructive opinion. It calls attention to the fact that it has been declared by the Alabama courts that the board of revenue is the repository of the authority and jurisdiction, whether legislative, judicial, or executive, committed to the county, and that this body is entitled "a court of record." Authorities are cited, and the conclusion reached that, in the several matters committed to them, the county board exercises a discretion that cannot be exercised for them, and that, in the performance of such duties, they exercise a function that is quasi legislative, and that their acts in this behalf, when free from fraud, corruption, or unfair dealing, cannot be controlled or reviewed by any other court. From these general principles, and from the authorities in the case cited and universally applied, it must be concluded that, in determining whether or not the courthouse should be built, and upon what lot it should be built, and what the price should be (within the limit of the taxing power to discharge the debt), and in the employment of an architect, and in fixing his compensation, and in the manner of letting the bid, and in determining to whom the contract should be let, the board of revenue exercises a discretion which can in no manner be controlled, and that their action with reference to these matters is subject to judicial correction only when it is charged and established that there was fraud and collusion, participated in by the governing majority of the board, in the exercise of the functions committed to them. No court, then, could set aside the contract entered into between the board of revenue and Stevens, except upon the ground of fraud.

The case before us, however, presents not only this question, but the additional question as to whether, under his contract, Stevens had so performed his contract as to be entitled to have paid to him the sum allowed. A determination requires consideration of the character of the duties discharged by the county commissioners' court when claims are presented for payment. It is entirely clear that, if claims are refused, suit may be instituted upon them in the courts; and the proposition has never been made that, in addition to establishing the validity of the claims, it must also be established that the county commissioners' court, in rejecting them, have been guilty of fraudulent conduct. If it should be insisted that, in passing upon these claims, the county commissioners are really exercising judicial functions, and if the judgment which they reach is a judgment reviewable only for fraud, this additional allegation would have to be made and proved before any claim which one had against the county could be established in the ordinary courts. The conclusion is not one that could be accepted. If the court is not exercising judicial functions when it rejects a claim, can it be said that it is exercising judicial functions when it approves a claim? The character of its act must be held the same in either event. When the action of the county commissioners in the approval of the claim has further ripened into some character of evidence of indebtedness, a somewhat different status may be attained; and when such evidences of indebtedness shall have acquired the status of negotiable instruments, doubtless different rules would be applicable. But, so long as the claims are still unpaid and not substituted by a new character

of county obligation, there would appear to be no reason why the county could not have the same access to a court to establish the invalidity of the alleged claim as a claimant whose claim had been disallowed, to establish its validity. The only difference would doubtless be that allowance by the county board would be prima facie evidence of the validity of the claim.

Making direct application of these principles to the instant claim: If fraud in making the contract be shown, no question could arise about the right of the county to attack the board's allowance of the claim, and have the warrant declared illegal. The county may also establish, even if the contract was valid, that it was not performed, and that the resolution adopted by the board of revenue was improvidently and improperly passed on account of that fact. The views which are here expressed are amply sustained by the Alabama authorities.

Commissioners' Court v. Moore, 53 Ala. 27:

"In the exercise of this authority, the act of the court is not judicial, but executive. If it audits and allows a claim not properly and legally chargeable on the county, or which it has not authority to allow, it exceeds the power with which it is intrusted, and as the act of a corporation which is ultra vires is void, so is the action of the court. Or if, upon false evidence, it should be lured into the allowance of an unjust claim, or should allow a claim which was wanting in consideration, or the consideration of which failed, the county would not be estopped from defending against it. The audit and allowance has no more force and effect than a settlement between individuals. It is a simple admission by the court of county commissioners that there is a valid subsisting debt due and owing by the county. The admission prima facie fixes a liability on the county. So, if a settlement is had between individuals, and the one makes his note or bond payable to another for an ascertained balance, a prima facie debt is established. In each case the burden of impeachment rests on him who questions the prima facie evidence. If, after the audit and allowance, a warrant is, pursuant to the statute, drawn on the county treasurer, it is a mere authority to him to pay. It is nothing more really than an order on the county itself, the debtor. Dillon, Munic. Cor. §§ 406–412. When such warrants have been illegally issued—issued without authority, or when any just defense exists against the claim which they evidence—the county may maintain a bill in equity for their cancellation. Id. § 412. And this we incline to regard as the most appropriate remedy. When the claim has been audited and allowed by the commissioners' court, it ceases to be the subject of a suit in the ordinary modes against the county. If the commissioners' court fail to levy and collect a tax for the payment of such claim, they fail to exercise a ministerial or executive power, with which they are clothed, and in the exercise of which an individual has a right and interest, and mandamus lies to compel its exercise. Marshall County v. Jackson County, 36 Ala. 613. The answer to the application for such writ could set up the invalidity of the claim audited and allowed. If the funds are in the treasury of the county to pay the same, and the county treasurer should be proceeded against for a failure to pay on demand, it would be his duty to set up in defense the invalidity of the claim."

*The Claim for $7,225.*—The contract of Stevens with the county provided for payment to him for the services therein set forth of 5 per cent. of the cost of the building. Under the terms of the contract, a part of this was payable at the time the contract for the construction of the building was let; and the $4,198.14, already discussed, was the three-fifths of the total amount held payable at that time. The balance of the compensation of the architect was to have been paid as the work

progressed. While the $4,198.14 was based upon the bid of the Little-Cleckler Company, the total is based upon the bid of the Falls City Construction Company finally accepted. The work of the Falls City Company has been abandoned, but this fact cannot affect the claim of Stevens, if it be otherwise meritorious; and the circumstance that the abandonment was the result of the action of the county, and also the fact that the contract with Stevens was repudiated by the county, gives Stevens a right of action for a breach of his contract. If, however, Stevens can recover at all, it is manifest that, under no circumstances, can the total amount claimed be recovered by him, and that the judgment of the trial court for the total is erroneous. Provision is made in the contract for certain expenses to be met by Stevens, and a recovery of damages for a breach of the contract would necessarily take these expenses into account in a determination of the amount of damages. The observations already made with reference to the $4,198.14 apply to the balance of the claim of $7,225, except that this balance, not having at any time been approved by the board of revenue, must be established by a preponderance of the evidence in favor of the defendant. While the county must show that the $4,198.14 arose out of the contract that was fraudulently made, or that the contract was not carried out by Stevens, the ordinary burdens of a plaintiff as to the balance of the amount must be upon the defendant.

[5] *The Claim on the Injunction Bond.*—Claim for damages on the injunction bond cannot be set up as a counterclaim. It does not arise out of the transaction which is the subject-matter of the suit, but arises out of the suit itself. Nor is it an independent cause of action, upon which an equity suit could be based. But the injunction bond was given in this case, and is an incident of the case, and in this case judgment may be given upon it, if it be shown that damages have accrued. There are obligees of the bond other than defendant the Falls City Construction Company, W. H. Stevens, and W. H. Johnson. There could be no recovery on the bond without these being parties, except for the fact that, having been parties, any claim either of them might have had has been settled by the agreement as the result of which they were dismissed from the suit. As to the surety, the principles of Pease v. Rathbun, Jones Eng. Co., 243 U. S. 273, 37 Sup. Ct. 283, 61 L. Ed. 715, Ann. Cas. 1918C, 1147, would seem to apply. The defendant asserts that the allegations with reference to the claim on the injunction bond are not denied. Issue is formally joined. But in any event, the items of damages, consisting of attorney's fees and other items of expenses incident to the litigation of this case, are not such as are allowable in a federal court. The judgment of the court as to this claim should be affirmed.

[6] *Claim for Damages for Libel.*—Defendant's counterclaim for damages for libel is based upon the allegations of the pleadings in this case. It is not a counterclaim arising out of the transaction which is the subject-matter of the suit. The suit is a matter distinct from the cause of action upon which it is based.

Suit for damages for libel may be predicated upon pleadings. In order, however, to sustain such a case, it would have to appear from the

pleadings of the plaintiff that the allegations complained of were maliciously made, were without foundation in fact, and that the pleader had knowledge of the fact that the allegations were lacking in truth. The evidence in this case is entirely insufficient to maintain the counterclaim. The statements of fact in the pleadings complained of are apparently, as to most matters, true. Where the evidence does not make it appear that they are true, there is nothing to indicate that the pleader had knowledge of the lack of truth. The conclusions of fact, which constitute a large part of the pleadings, are not without warrant; and, if they were, there is nothing to indicate that the conclusions were not the bona fide conclusions of the pleader. The evidence in this case would not have warranted a judgment for damages.

[7] This claim has been discussed upon the assumption that a good cause of action could be stated against a county for libel. A county is a governmental subdivision of the state, with very limited and strictly defined powers. No county has been given the authority to commit a libel, nor given the power to authorize any one to commit a libel for it. It is a character of tort for which a county cannot be held.

The judgment of the trial judge with reference to the claim for damages for libel may be sustained upon either of these grounds: (1) There was no proper presentation of the claim to the board of revenue. (2) It was not a matter upon which a counterclaim could be predicated. (3) The evidence would not, in any event, have sustained a judgment. (4) A county cannot be held for damages for libel.

*Provisions of the Decree as to Payment, etc.*—The decree gives directions to the county board of revenue and other officers of the county as to the auditing, allowance, registration, and payment of the claim (paragraphs 4, 5, and 6). Where judgment has been given against a county, the court may, in the case in which it is rendered, make such executory orders and decrees as may be necessary to make the judgment effective; but, if the execution of the judgment requires orders to or against officers of the county, the individuals who are these officers must be brought into court. None of the officers of Covington county has been made a party to this suit, and the judgment as to each of them is ineffective and erroneous.

The judgment is affirmed as to the claim for damages for libel and upon the injunction bond. The judgment is in other respects reversed, and the cause is remanded for another trial upon the issues presented by the pleadings with reference to the contract of the county with Stevens, and his claims arising out of the contract.

In part affirmed, and reversed in part.