## TROY NAT. BANK v. RUSSELL COUNTY et al.

(District Court, M. D. Alabama, N. D., at Montgomery. June 22, 1923.)

1. **Counties** ⊜➡150(2)—**Warrants and certificates of indebtedness held not "debt," within constitutional limitation.**

   County warrants and certificates of indebtedness, specifically appropriating the revenues for the current year in anticipation of the taxes of that year, under Acts Ala. 1915, p. 105, money from which was used for defraying current and necessary expenses of the county, maintenance of the public roads, etc., *held* not "debts," within the meaning of Const. Ala. 1901, § 224, limiting indebtedness of county.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

2. **Estoppel** ⊜➡62(3)—**By recitation in bond that debt does not exceed constitutional limit.**

   Where bonds were issued by a county under Const. Ala. 1901, § 222, and were negotiable instruments, recitals in the bonds that the debt thereby created did not exceed the limit prescribed by the Constitution, estopped the county from asserting as against a bona fide holder for value that the contrary was the fact.

3. **Counties** ⊜➡167—**Certificates and warrants not negotiable.**

   Certificate of indebtedness and warrants are not negotiable in Alabama.

4. **Counties** ⊜➡170(4)—**Burden rests on county to show invalidity of warrants and certificates of indebtedness.**

   Where county issued certificates of indebtedness and warrants, and properly expended the proceeds in the discharge of its duties and functions, the county must show the invalidity of such warrants and certificates by clear, satisfactory, and convincing evidence, in an action against the county by holders in good faith.

5. **Evidence** ⊜➡83(4)—**Presumed that warrants were renewals, so that indebtedness of county did not exceed limit.**

   In Alabama, when the county introduced in evidence various ordinary noninterest-bearing warrants for the purpose of invalidating contested claims, on the ground that the latter exceeded the debt limit, the law will presume, in absence of evidence to the contrary, that such warrants were renewals or duplicates, or represent involuntary obligations, for it will not be presumed that the officers of the county transgressed the constitutional mandate.

In Equity. Bill by the Troy National Bank against Russell County and others. Decree for plaintiff and interveners.

G. W. L. Smith, of Brewton, Ala., and Steiner, Crum & Weil, of Montgomery, Ala., for plaintiff.

John S. Stone, of Birmingham, Ala., Frank M. de Graffenried, of Seale, Ala., and Bernard Lobman, of Montgomery, Ala., for interveners and claimants.

W. H. Merrill, of Eufaula, Ala., and Farmer, Merrill & Farmer, of Dothan, Ala., for defendants.

CLAYTON, District Judge. Professing to act by authority of law, and within its jurisdiction, the court of county commissioners of Russell county caused to be issued, pursuant to the provisions of article 8, chapter 11, of the Code of Alabama of 1907, 30-year bonds of the county, bearing date March 1, 1911, in various denominations and aggregating $120,000, of which $100,000 were for public road pur-

⊜➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

poses, with 5 per cent. coupons attached, maturing semiannually. Subsequently, and from time to time during the year 1915, the county caused to be issued interest-bearing obligations of the county, designated "road and bridge warrants," for public road purposes, in various denominations. Likewise, in August, 1917, such or similar road warrants were issued in various denominations and maturing on various dates, aggregating some twenty odd thousand dollars; in April, 1919, another series of road warrants of similar import, aggregating the sum of $22,000, were issued; and in 1919 the county issued or caused to be issued under Acts 1915, p. 105, and a local act for Russell county, interest-bearing "certificates of indebtedness" for temporary loans, in anticipation of taxes for the year 1919, payable to bearer, and aggregating the sum of $50,000. The revenues of that year were in excess of $61,000.

One or more installments of interest on some or all of these various obligations, and some part of the principal of some of them, was or were paid by the county; but, new officials having succeeded to office, the county sought to repudiate those obligations as having been created in excess of the debt limit prescribed by section 224 of the Constitution of Alabama, and therefore void. Thereupon the Troy National Bank, of Troy, Ohio, having acquired certain of these temporary loan certificates of indebtedness, issued in 1919, filed its bill in this cause, seeking to enjoin the county from diverting or otherwise appropriating the revenues of the county which had been pledged for the payment of the certificates, to establish the validity of the certificates, and enforce the payment of the principal and accrued interest thereon. Subsequently various other holders of these or some of these several obligations intervened and became parties plaintiff to the proceeding.

The county of Russell answered the original bill, and subsequently made its answer a cross-bill, invoking the jurisdiction of the court, and seeking the cancellation of these various obligations, chiefly for the reason stated, and offering to abide by and perform such orders and decrees as the court might deem proper, and meantime that the revenues of the county be administered under the supervision of the court. At the suggestion of the parties to the cause, other creditors and claimants were, by order of the court, directed to propound their claims, and the matter was thereupon referred to a special master, to take the testimony and report his findings of fact and conclusions to the court for its further consideration and decree. The master accordingly, after a prolonged and extensive investigation and consideration of voluminous testimony, has made an elaborate and careful report, finding as matter of fact that the county had not exceeded its debt limit, and that the various claims now in controversy were legal and valid obligations of the county. To this report the county of Russell has filed numerous exceptions, and the cause is now submitted upon those exceptions and upon the pleadings and proof for final decree.

The bonds mentioned, some of which are held by parties to this cause, as also the coupons thereto attached, are admittedly negotiable.

The bonds, upon their face, recite (omitting the formal promise to pay, the purpose for which they were issued, etc.) :

"It is hereby certified that said bond is issued, and all of the proceedings relating thereto have been done in strict compliance with the aforesaid article 8 of chapter 11 of the Code of Alabama of 1907, and the laws and Constitution of the state of Alabama, and for the payment of said bond and coupons, according to the tenor thereof, the full faith and credit of Russell county, Alabama, are irrevocably pledged, and that this bond and the debt thereby created are within every debt and other limit prescribed by the Constitution or laws of the state of Alabama."

The "certificates of indebtedness" are all of similar tenor and purport, payable with interest to bearer, and upon their face (omitting the formal acknowledgment of indebtedness, etc.), recite:

"This certificate of indebtedness is one of a series of certificates of indebtedness of like date, tenor, and effect, aggregating $25,000, numbered consecutively from 1 to 25, inclusive, issued for the purpose of securing and in evidence of a temporary loan made by the court of county commissioners of said county in anticipation of the collection of taxes for the year 1919, under authority of an act entitled 'An act to authorize the courts of county commissioners, boards of revenue, or other governing bodies of counties in this state, to make temporary loans in anticipation of the collection of taxes,' approved March 1, 1915 (Acts 1915, p. 105), and a resolution duly adopted by the court of county commissioners of said county on the 22d day of January, 1919, and there is hereby pledged and appropriated a sufficient amount of the uncollected taxes of the year 1919 to secure the repayments of said loan and the interest thereon at maturity.

"It is hereby certified, recited, and declared that the loan evidenced by the series of certificates of indebtedness of which this is one is not for a greater sum than one-half of the income of said county for the preceding year; that these certificates of indebtedness are entitled to priority of payment out of the proceeds of the taxes pledged to pay the same, and that all acts, conditions, and things required to be done precedent to and in the issuance of said certificates of indebtedness have been properly done, have happened, and have been performed, in regular and due form and manner, as required by the Constitution and laws of the state of Alabama, *and that the total indebtedness of said county, including said series of certificates of indebtedness, does not exceed any constitutional or statutory limitation.*"   (Italics supplied.)

Likewise the road warrants are payable to bearer and carry the recital:

"That all conditions and things required by the Constitution and laws of the state of Alabama to be done precedent to and in the issuance of said warrants have properly happened and have been done in regular and due form, as required by law, *and that the issuance of said warrants contravene no constitutional or statutory limitations, and are issued under the terms of the contract and the lawful orders of the court of county commissioners as said county* [italics supplied], that sufficient and proper provisions have been and will be made by the levy of a special road tax of one-fourth of one per centum annually, which, when collected, shall be applied exclusively to the payment of said series of principal warrants and the interest thereon as pledged by said contract and order of the court of county commissioners of said county sufficient to pay said warrants as they severally mature."

Other obligations, designated simply "county warrants," were issued, containing similar recitals as to the validity and regularity of the issue, omitting any reference to the debt limit.

The attack, in the outset, was directed against all, or practically all, of the various outstanding and unpaid obligations of the county, regardless of their character; but by concession and admission made in arguments and brief of counsel for the defendant, and by their exceptions to the master's report, the attack is now limited, it seems, to the four separate obligations, viz. the road warrants, aggregating some $21,500, issued in August, 1917; the two issues of temporary loan certificates issued in 1919, maturing February 1, 1920, of $25,-000 each; and the issue of road warrants of April, 1919, amounting to $22,000, all bearing interest at the rate of 6 per cent. per annum. It was either admitted or shown in evidence without dispute that these obligations were from time to time issued, duly registered, sold, and put in circulation by the county, and that the plaintiff and the several interveners and claimants here are the owners severally thereof, having acquired the same bona fide in due course of business, for value, before maturity. It is also either admitted or shown without dispute that the funds arising from these various securities or evidences of indebtedness were received and appropriated or applied by the county authorities to the purposes for which they were issued. There is no averment or charge of fraud or bad faith of any kind on the part of the officials of the county in either the issuance or sale of the securities, or of the disposition of the proceeds thereof.

It is insisted for the plaintiff, interveners, and creditors (1) that the obligation created by the certificates of indebtedness issued for temporary loans, and in anticipation of the current year's taxes and revenues of the county, and pledging such taxes and revenues, to defray expenditures made mandatory by law for the current year, as also the warrants issued for public road purposes, were not "debts" within the meaning of section 224 of the Constitution of Alabama; (2) that by the recitals contained in the face of the certificates and warrants made by the authorized representatives of the county, and on the faith of which these obligations were marketed, estops the county, in the hands of bona fide purchasers, from disputing or controverting those recitals; and (3) that as matter of fact, even though all of these obligations should be considered as "debts," within the meaning of the Constitution, and no estoppel exists, the defendant county has wholly failed to establish the fact that the county had exceeded the constitutional debt limit.

The "certificates of indebtedness" presented here are the only obligations of the county, so far as appears from the evidence, which specifically pledge and appropriate the revenues of the county for the then current year in anticipation of the taxes of that year, and were issued under the Acts of Alabama of 1915, page 105. (See, also, Local Acts of 1907, p. 584.) The money derived from these certificates was issued for defraying the current and necessary expenses of the county—for the maintenance of the public roads, of the convicts of the county, of the poor, the jails, expenses of court and county officials, and the like, pursuant to the laws of the state—payment of which is made mandatory, and failure so to do punishable by fines and penalties.

[1] The Legislature of the state has wholly, or in a large measure, delegated its power and authority over the public roads of the state to the several counties, and as to that subject the county has legislative, judicial, and executive authority. Acting through its court of county commissioners, or board of revenue, the county may, by virtue of the statutes, make all reasonable laws, rules, regulations, and contracts, with respect to the construction, maintenance, use, and operation of its public roads, including the right to levy a special county tax for that purpose (Acts 1907, p. 701; Acts 1915, p. 573; Code 1907, §§ 3312, 5767; Local Acts 1903, p. 355; Town of Eutaw v. Coleman, 189 Ala. 164, 66 South. 464), and, as has been many times said by the Supreme Court of Alabama, every reasonable intendment must be indulged in favor of the legality of such acts, rules, regulations, and contracts. It may be seriously doubted that such obligations of the county, and temporary loans made in anticipation of taxes for the current year, for the purpose of raising revenue to care for the mandatory and involuntary obligations of the county, are, or ought to be, considered "debts" within the meaning of the constitutional provision in question. Indeed, this seems to be substantially the view entertained by the Supreme Court of Alabama, and likewise by the Attorney General of the state, as indicated by his opinion introduced in evidence, and the view adopted by the examiner of public accounts of the state in his investigation and report upon the financial condition of the county; and, since the original bill was filed in this case, counsel for the county has petitioned this court monthly for the payment of such claims and expenses on the ground that they are mandatory obligations, absolutely essential to the functioning of the county, and such claims have been uniformly allowed by this court, amounting in the aggregate to something approximating $120,000. There is admittedly conflict of authorities on this question, but the Supreme Court of the United States, as also the Supreme Court of Alabama, have indicated that they favor that line of authorities which make for a liberal construction of such constitutional provisions—a construction which accords with reason and "common sense." Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 23, 19 Sup. Ct. 77, 43 L. Ed. 350; Brown, Treas. v. Gay-Padgett Hdwe. Co., 188 Ala. 423, 66 South. 161; O'Rear v. Sartain, 193 Ala. 282, 69 South. 554, Ann. Cas. 1918B, 593; Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 South. 8. I am therefore inclined to the opinion that those obligations of the county, which are mandatory and involuntary, are not "debts," within the meaning of section 224 of the Constitution.

[2] The bonds were issued under section 222 of the Constitution, are negotiable instruments, and are in the hands of innocent purchasers for value. It has been expressly held that the recitals in such instruments that the debt thereby created does not exceed the limit prescribed by the state Constitution estops the county from asserting, as against a bona fide holder for value, that the contrary is the fact, and, as I understand it, their validity is conceded by counsel for the county. Board of Com'rs Gunnison County v. Rollins, 173 U. S. 255,

19 Sup. Ct. 390, 43 L. Ed. 689; Littlejohn v. Littlejohn, 195 Ala. 614, 71 South. 448.

But, with respect to the road warrants and the certificates of indebtedness different questions are presented. Both issues are payable to bearer, and, viewing the resolutions adopted by the court of county commissioners, they were issued with care and precision, and were evidently intended to be negotiable. Neither, however, contains any specific "promise to pay," but merely recites that the county is "justly indebted to bearer in the principal sum of," etc. The warrants are in effect an order from one county official to another to pay the principal and interest at maturity, while the certificates recite that they are payable at the Hanover National Bank in the city of New York, and specifically pledge the taxes of the county for the then current year for the payment thereof. Acts 1915, p. 105. It is insisted on behalf of the county that these instruments are nonnegotiable, and that the county was without power or authority to issue them in negotiable form, citing Littlejohn v. Littlejohn, supra, De Kalb County v. McCartney, 207 Ala. 230, 92 South. 439, Commercial Trust Co. v. Laurens County (D. C.) 267 Fed. 901, Brenham v. German Bank, 144 U. S. 173, 12 Sup. Ct. 559, 36 L. Ed. 390, and 2 Dillon, Munic. Corp. 1330–1339; while counsel for plaintiff and interveners insist that, in the circumstances of the case, the securities fall within the influence of the class considered in the cases of Mayor v. Ray, 86 U. S. 468, 478, 22 L. Ed. 164, 170, Hornblower v. Pierre, 241 Fed. 453, 154 C. C. A. 282, Denver v. Home Savings Bank, 236 U. S. 103, 105, 35 Sup. Ct. 265, 59 L. Ed. 487, and Alabama City v. Gadsden, 185 Ala. 268, 269, 64 South. 91, Ann. Cas. 1916C, 573. See, also, Acts Ala. 1915, pp. 105 and 573.

[3] Undoubtedly the Legislature may, except as restrained by the Constitution, grant to the counties the right to issue securities in negotiable form; but, except as is implied from section 222 of the Constitution of Alabama with reference to the issuance of bonds, I do not find that to have been done, nor has my attention been called to any statute which expressly prohibits the issuance of county obligations in negotiable form. There is, however, as said by the Supreme Court of Alabama in the Littlejohn Case, a fundamental difference between warrants and bonds, and I am of the opinion that the certificates and warrants are not negotiable. But, whether negotiable or nonnegotiable, the more important question is: Do the recitals in the face of the certificates estop the county from questioning their validity or disputing the truth of those recitals? Courts of county commissioners, while acting within the scope of their authority and duties, are courts of record, and their findings and judgments, while thus acting, are as final and conclusive as those of other courts of record. Edwards v. Bibb County, 193 Ala. 558, 69 South. 449; Ensley Motor Co. v. O'Rear, 196 Ala. 484, 71 South. 704. And in the exercise of their judgment and discretion, in the absence of fraud or bad faith, no other court can interfere. Covington County v. Merrill, 193 Ala. 529, 68 South. 971; Stevens v. Covington County, 256 Fed. 328, 167 C. C. A. 498. And it appears that one of the duties of the

commissioner's court in issuing the obligations of the county is to ascertain whether or not the debt limit has been, or will thereby be, exceeded. Goodson v. Dean Judge, 173 Ala. 301, 55 South. 1010.

It would seem not only reasonable, but necessary, that this duty should devolve upon some one—some official or tribunal of the county. The purpose of the county in issuing its obligations is, of course, to raise revenue, or to pay debts, and it is manifest that, if the prospective creditors or purchasers of such securities are required to investigate and ascertain, each for himself, whether or not the debt limit had been exceeded, it is hardly reasonable to suppose that the county would make much, if indeed any, progress in the disposition of such securities. A fair illustration of that situation is presented here, where it has required the services of the special master, aided by a mass of records, the testimony of county officials, expert accountants, and legal talent running over a period of several months, to ascertain, not only what the assessed value of the taxable property of the county was, but the amount of the debts, the character thereof, when, how, and for what purpose they were created, and whether or not they exceeded the debt limit. As was said in the case of Cuddy v. Sturtevant, 111 Wash. 313, 190 Pac. 912, 913:

"When it becomes a question, between an innocent purchaser of bonds in the open market and the city purporting to issue them, as to which should be the loser by a breach of duty on the part of the city officers, such questions should be resolved in favor of the innocent purchasers" on the ground of estoppel.

And in Flagg v. School District, 4 N. D. 30, 51, 58 N. W. 499, 507 (25 L. R. A. 363):

"The doctrine, however, is one that is entirely independent of the question of negotiability. If it is correct, it applies equally to nonnegotiable paper. * * * The question of estoppel, * * * has never been regarded as forming an element in building up the doctrine of estoppel by recitals, although, in most of the cases, it is true that it appears that the bonds were in fact negotiable."

See, also, Gunnison County v. Rollins, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; Bernard, etc., v. Morrison, 133 U. S. 523, 10 Sup. Ct. 333, 33 L. Ed. 766; Schmidt v. City of Defiance (C. C.) 117 Fed. 702; Town of Brewton v. Spira, 106 Ala. 230, 17 South. 606; Town of Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704, 27 L. Ed. 429.

Independent, however, of either of the foregoing propositions, I am convinced that the finding of the special master to the effect that the evidence did not sustain the insistence of the county that the obligations which are now in question were created in excess and in violation of the constitutional debt limit is correct.

[4] When, as here, it is admitted that these obligations were issued, sold, and marketed in good faith, that the revenues derived therefrom were properly expended by the county in order to enable it to discharge its duties and functions, and that the holders thereof acquired them in good faith for value, and when the county now, and in the face of the express solemn recitals and declarations of its constituted authorities, on the faith of which they were sold, seeks to repudiate

these obligations, common honesty and the principles of fair dealing, suggest that their invalidity should be shown by clear, satisfactory, and convincing evidence, and may not be left to doubt, surmise, or conjecture, and the burden of establishing the fact rests throughout upon the county. Rollins v. Board of Com'rs, etc., 90 Fed. 575, 33 C. C. A. 181; Potts v. Conecuh County, 203 Ala. 300, 82 South. 550; German Ins. Co. v. City of Manning (C. C.) 95 Fed. 597. It was incumbent upon the county to show the assessed value of the taxable property of the county, and that the specific obligations in question were "debts" within the meaning of the Constitution; that they exceeded 3½ per centum of the assessed value of the property of Russell county at the time they were issued, and that such obligations were not within the exceptions pointed out in the Constitution.

It appears from the master's report, as also from the record, that the defendant offered in evidence a mass of obligations, ordinary demand warrants, of various types and kinds, issued for various purposes on various dates, many of them paid, and many of them unpaid, most of them issued in the years 1916, 1917, 1918, and 1919, for the purpose presumably of showing that the aggregate was in excess of the debt limit. The laws of Alabama provide that, when ordinary county warrants are issued to disburse the county revenues, an itemized sworn account of the labor or material furnished must be first filed as a claim against the county, and which must thereupon be audited, allowed, and ordered paid. For this a demand warrant is usually drawn, registered against the proper fund, and paid in the order of registration out of the particular fund. It does not appear that any of these itemized sworn accounts, subsequently carried into the demand warrants, were offered in evidence, and the consideration of the warrants in many instances is not shown. Which of these warrants were drawn for preferred claims, whether they were voluntary or involuntary and mandatory obligations of the county, whether or not there were funds in the county treasury, or in "valid expectancy" for the payment thereof, whether or not any of them represent obligations not made directly by the county, but under independent statutes, such as relate to the state live stock sanitary board for the eradication of cattle ticks, etc., and for which payment is required under penalties (Acts Ala. 1915, pp. 124 and 341; Acts 1919, p. 29), is not shown, but left entirely to conjecture. Warrants issued in such manner as to assign money in the treasury, or in course of collection from taxes, and wherein a creditor or holder looks solely to such revenues for payment, and not to the general obligation of the county; warrants drawn in anticipation of current revenues for current expenses, wherein appropriations have been specifically made out of the current revenues for the payment thereof; obligations to renew, to refund, or extend preceding obligations and warrants; warrants drawn in duplicate, or ordinary demand warrants issued on the treasurer to disburse moneys borrowed, or obtained by the county by the issuance and sale of its obligations, being in effect duplicates—cannot be considered as debts within the meaning of the Constitution.

[5] When these various ordinary noninterest-bearing warrants are

offered in evidence for the purpose of invalidating the contested claims, on the ground that the latter exceeded the debt limit, the law will presume, in the absence of evidence to the contrary, that such warrants were renewals or duplicates, or represent involuntary obligations, for it will not be presumed that the officers of the county transgressed the constitutional mandate. McCrary v. Town of Brantley, 202 Ala. 138, 79 South. 602. It seems that the county introduced in evidence numerous demand warrants issued in the year 1917 to disburse something more than $100,000 of the funds obtained by the county from the sale of the interest-bearing warrants, which are now a part of those contested. Certainly these warrants, issued merely for the purpose of disbursing the fund thus obtained, cannot be considered for the purpose of invalidating the very claims from which the funds arose. It also appears that a large number of interest-bearing warrants introduced in evidence show upon their face that they were issued and made payable to the county treasurer in amounts from $6,000 to $10,000 each, as also several renewals thereof, and which have been paid. It will be presumed that these warrants were illegal, since the county officers are forbidden by law to contract with the county, or to deal in its scrip, or that they were issued merely for the purpose of disbursing a particular fund on hand for a particular purpose, and did not represent "debts." With no evidence to the contrary, the court should indulge the latter presumption. Likewise the county offered in evidence the temporary loan certificates, amounting to $50,000, which were outstanding in the year 1918, maturing February, 1919, issued in anticipation of taxes, and which were evidently retired and canceled by the proceeds from the sale of certificates issued February 1, 1919, representing, evidently, the same debt or obligation.

Moreover, all of the very obligations which are contested were offered in evidence by the county as valid obligations, for the purpose of establishing the validity of other of the contested obligations, and vice versa. It also appears that a considerable amount of the money was in the county treasury in 1919 arising from the sale of some of the obligations contested, and was on hand at the time the county sought to repudiate that obligation. This fund was not tendered back to the claimant, but has since been expended by the county. As was said by the Supreme Court of the United States in Town of Pana v. Bowler, 107 U. S. 541, 2 Sup. Ct. 714, 27 L. Ed. 429:

"This * * * proposition is one which falls among the general principles and doctrines of commercial jurisprudence, and upon which it is our duty to form an independent judgment, and in respect of which we are under no obligation to follow implicitly the conclusions of any other court, however learned or able it may be."

Nor is it the public policy of the state to repudiate its obligations on technical grounds. Acts 1915, p. 704; Acts 1920, p. 154. I am of the opinion, and therefore conclude, that the several obligations in controversy are the valid and legal obligations of Russell county, and charges against the funds pledged or appropriated, that the ex-

ceptions to the master's report are not well taken, and that the plaintiff and interveners are entitled to relief; and a 'decree will be entered accordingly.