## Colvin v. Ward, et al.

### Bill to Restrain Issue of Municipal Bonds.

(Decided June 30, 1914.   66 South. 98.)

1. *Municipal Corporations; Powers.*—A municipal corporation can exercise only such powers as are granted it in express terms, those necessarily implied in, or incident to, the powers expressly conferred, and those indispensably necessary to the accomplishment of the objects of the municipality.

2. *Same; Issuing Bonds; Bill by Tax Payer.*—A tax payer of a city may file his bill in equity to enjoin the issuance by a municipality of bond for a purpose not authorized by law.

3. *Same; Statutes; Repeal.*—Sections 1421, Code 1907, is impliedly repealed by Acts 1909, p. 188, since under Acts 1909, p. 174, no provision of the Code can affect any act adopted at the special session of the legislature held in 1909.

4. *Same.*—Under Acts 1909, p. 188, the issuance of bonds for a municipal auditorium, and the acquisition of a necessary site therefor is not authorized, the word 'named" as used therein means "specified," and is followed by the numerated purposes for which bonds may issue.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Gus Colvin against George B. Ward and others, as governing officers of the municipality of Birmingham, to restrain the issue of bonds for a municipal auditorium and the acquisition of a site therefor. From a decree sustaining demurrers to the bill, complainant appeals.   Reversed, rendered, and remanded.

GUS COLVIN, *pro se.*

S. J. BOWIE, and ROMAINE BOYD, for appellee.

[Colvin v. Ward, et al.]

McCLELLAN, J.—According to the forms and processes provided by law for the authorization and issue of municipal bonds, the city of Birmingham submitted to the vote of its electorate the question whether the bonds thereof, for a definite amount, should be issued "for the purpose of constructing a municipal auditorium and acquiring the necessary site therefor." The appellant, a citizen and taxpayer of the city of Birmingham, presented his bill seeking to restrain the effectuation of the issue of bonds, to the issuance of which the majority voting in the election had given approval at the ballot box.

Such a one may invoke equity's injunctive power to avert the issuance of municipal bonds for a purpose not authorized by law.—*Coleman v. Town of Eutaw*, 157 Ala. 327, 47 South. 703.

The court below gave effect to its conclusion that the bill was without equity by sustaining general demurrer to the bill. The appeal is from that decree.

It is established that a municipal corporation may exercise these, and only these powers: Those granted in express terms; those necessarily implied in, or incident to, the powers expressly conferred; and those indispensably necessary to the accomplishment of the declared objects and purposes of the municipality.— *New Decatur v. Berry*, 90 Ala. 432, 7 South. 838, 24 Am. St. Rep. 827; *Cleveland Furn. Co. v. Greenville*, 146 Ala. 559, 41 South. 862; *City of Eufaula v. Mc-Nab.* 67 Ala. 588, 42 Am. Rep. 118; *Ex parte Mayor, etc., of Florence,* 78 Ala. 419.

The codification of 1907 made its article 27 (section 1421 et seq.) by appropriating the several sections (omitting the general repealing clause) of the act approved February 25, 1903.—Gen. Acts 1903, pp. 59-64. Code, § 1421—corresponding with section 1 of the act

[Colvin v. Ward, et al.]

mentioned—reads: "The mayor and common council, mayor and aldermen, or other governing body, of any city or town in this state, may order elections to be held in such city or town for the purpose of the qualified electors of such municipality voting upon and deciding the question as to whether or not the bonds of such municipality shall be issued *for the purpose of purchasing or constructing public buildings,* sewers, streets, alleys, bridges, and public schoolhouses and buildings, to purchase waterworks and light plants, or to constuct the same, or for such other purposes as are authorized by law, whenever such governing board deems it necessary; but no second election under this article shall be held within two years of an election theretofore held for the same purpose, unless it be to authorize the issue of bonds to rebuild public buildings or other public utilities or bridges, destroyed since the issue of the order of such first election."

It is insisted that the italicized provision of the section comprehends a "municipal auditorium and the acquiring of the necessary site therefor." In response to this contention it is urged by the complainant that section 1421 was repealed by the act, treating the subject of municipal bond issues, approved August 26, 1909 (Gen. Acts Sp. Sess. 1909, p. 188 et seq.), and that the act confers no power or authority to order an election or to issue municipal bonds for the purpose of purchasing or constructing a municipal auditorium, or for the purpose of purchasing a site therefor. The question thus made has been considered by the full bench. The conclusion in that the act of 1909 superseded and repealed Code, § 1421.

The considerations leading to this result will be stated; but before doing so we take account of the suggestion that the act readopting the Code, approved

on the day the act under view was approved, has or should have an effect upon the solution of the inquiry stated. The second section of the readopting act (Gen. Acts Sp. Sess. 1909, p. 174) provides: "That all acts of the Legislature, passed at the special sessions of the Legislature, altering, amending or repealing the sections of the Code, or the acts of the Legislature passed at the general or special sessions are unaffected by the adoption of this Code."

So by express declaration no provision of the Code of 1907 (section 1421 was of the Code adopted by the act approved July 27, 1907 [Gen. Acts 1907, p. 499]) could or did affect any act adopted at the special session of 1909, one of which was the Act treating bond issues by muinicipalities. Such was the presently authoritative ruling in *Fulton v. State,* 171 Ala. pp. 572, 576-682, 54 South. 688.

While repeal of enactments by implication is not favored in law, yet, when the legislative intent in and the effect of the subsequent enactment are found to conclude to the abrogation of the former law, the repeal thereof becomes an accomplished fact, notwithstanding there are in the subsequent enactments no words of repeal.

"It is an old and well-defined rule of statutory construction that a subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate a repeal of the former."—*Lemay v. Walker,* 62 Ala. 39, 40; *Ogbourne v. Ogbourne,* 60 Ala. 616; *Scott v. Simons,* 70 Ala. 352, 356; *Prowell v. State ex rel. Hasty,* 142 Ala. 80, 87, 39 South. 164; *Fulton v. State,* 171 Ala. 572, 54 South. 688.

The particular inquiry is whether the intention and effect defined in the rule of construction quoted ap-

pears as from the status made of the Code section and its related sections and the act of 1909?

As stated ante, article 27 of the Code of 1907, including its section 1421, was, with an unimportant, at this time, exception, the act of 1903. The general legislative purpose in the act of 1903 and in the article of the Code was to declare the purposes and to fix the conditions and to establish the method for, under and by which municipalities might issue bonds. The subject of the legislative intent and object was the same in both instances, when the original act of 1903 was adopted and when the codification was approved.

The act of 1909 purported to treat, and did treat, the same subject. In doing so it entered upon the particular enumeration of the purposes to accomplish which bonds might issue. It contains provisions—in almost perfect accord, as :to sectional divisions and general arrangement and order, with article 27 of the Code—of like character with those to be found in the sections of the article. Indeed, the only omission of a major character from the act of 1909 are the reiteration of constitution limitation on indebtedness incurrable, set forth in Code, § 1430. The act and the article have been carefully compared, provision by provision, and their general similarity and comprehensiveness is striking and very significant. After so doing, it is manifest that the lawmakers had in mind legislative *substitution*—not the affording of an auxiliary or supplementary adjunct to the law on the subject of municipal bond issues. It is seen that the act enumerates every character of municipal structure which would ordinarily occur to the mind as serving usual, familiar municipal activities or functions. The only general references therein to public buildings is found in the first and second sections, where rebuild-

ing is the purpose, and where a *site* for a building to be used for public purposes is the thing contemplated. When the entire act is considered, it is clear that both references relate to structures of the character enumerated by subdivisions in the act. There is no provision in the act of 1909 that could justify the conclusion that the purpose here under view was authorized thereby. The reference to *site*, in section 2 subd. 1, has manifest reference to sites for the structures enumerated in the act. So particular were the lawmakers in their intent to define the powers conferred that they employed the emphasizing word "named" in the phrases "for the purpose or purposes, hereinafter named," and "following named purposes." The word "named," as therein employed, means "specified." The general reference, in subdivision 21 of section 2 of the act of 1909, to wit, "for such other purposes as may be authorized by law," cannot be taken as a manifestation of a legislative intent to leave unaffected by that act, treating the whole subject as it did, the single provision of section 1421 relating to "purchasing or constructing public buildings."

It results that, if sustained by the proof, the bill has equity to restrain the unauthorized action of issuing the bonds of the city of Birmingham, for the purpose of affording funds with which to construct a "municipal auditorium and acquiring the necessary site therefor." The decree sustaining the demurrer to the bill was laid in error. A decree will be here entered reversing that decree and overruling the demurrer.

The cause is remanded.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SOMERVILLE. and DE GRAFFENRIED, JJ., concur.