(79 South. 602)

J. B. McCRARY CO. v. TOWN OF BRANTLEY. (4 Div. 751.)

(Supreme Court of Alabama. June 20, 1918.)

1. MUNICIPAL CORPORATIONS ⬤➡908—NOTES —CONSIDERATION.

Municipal notes, reciting consideration of extras on light and water plant installation, but actually given to the contractor to pay the difference between the agreed 6 per cent. bonds by which he was to be paid, and 5 per cent. bonds which he accepted, believing the 6 per cent. bonds would be illegal, did not show illegal consideration, and were valid.

2. MUNICIPAL CORPORATIONS ⬤➡907 — BONDS —INTEREST.

Under Acts Sp. Sess. 1909, p. 192, § 11, which repealed Code, § 1432, cities of less than 6,000 population may issue bonds bearing 6 per cent. interest.

3. MUNICIPAL CORPORATIONS ⬤➡955(2)—ACTION ON NOTE—DEFENSES—PLEADING—"INCURRING DEBT."

In action on municipal notes for difference in interest between contract and bond rate, plea that the debt was incurred in violation of Const. 1901, § 225, which prohibits indebtedness in excess of 5 per cent. of the assessed valuation, but excepts debts contracted prior to its adoption, was insufficient when it failed to allege that the debt was in excess of the limitation, or to show what portion of the debt was in excess, or to show whether the notes were renewals, or whether the indebtedness recited included sums excepted by statute, since the mere giving a note is not incurring the debt.

Appeal from Circuit Court, Crenshaw County; A. E. Gamble, Judge.

Action by the J. B. McCrary Company against the Town of Brantley. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Appellant, under contracts with appellee, built or constructed an electric light plant and a system of waterworks for the town. The two plants were constructed under different contracts. The first contract was for the building of the electric plant, and the second, for the construction of the water

plant. This action was brought by appellant against appellee, and sought to recover on two notes, given to secure partial payments for the construction of these two plants. The defendant filed a number of pleas, attempting to set up defenses, that the contracts were illegal and void because they violated certain provisions of the Constitution and of the statutes, in that they created a debt on the part of the city in excess of the constitutional limit fixed for cities of appellee's class, and in that they provided for the issuance of municipal bonds in payment of the debt. Demurrers were sustained as to most of these pleas, but were overruled as to those numbered 15, 16, and 18. To these, plaintiff filed special replications, to which demurrers were sustained; and, issue being joined on these pleas, the case was tried by the court on an agreed statement of facts, and judgment rendered for defendant. From that judgment plaintiff appeals, assigning error as to the adverse rulings and as to the rendition of the judgment, to which an exception was reserved. Plea 15 was in words and figures as follows:

"(15) The defendant avers that it was during the entire year 1912, a town having a population of less than 6,000 people and that at an election held by it on August 26, 1912, it was authorized to issue bonds in the sum of $18,000, bearing 5 per cent. interest per annum, to run for 30 years from July 1, 1912, which bond issue was for the purpose of paying the plaintiff eleven thousand eight hundred seventy dollars under its contract with the plaintiff of date June 7, 1912, for the erection of a waterworks plant for defendant, which contract provided that defendant was to pay plaintiff 6 per cent. interest per annum on said bonds above referred to. A duplicate copy of said contract is hereto attached and made a part of this plea. Defendant further avers that the notes or obligation here sued on were executed by defendant and accepted by the plaintiff to cover the difference of 1 per cent. interest per annum on the bonds authorized under said election of August 26, 1912, above referred to, and the rate of interest named in its contract of June 7, 1912, with plaintiff, wherefore defendant says plaintiff ought not to recover."

Plea 16 was, in legal effect, the same as plea 15, and set out the contract as an exhibit thereto. Plea 18 was as follows:

"(18) The defendant avers that at no time prior to the execution of the obligations sued on did it have a population of 6,000 people, and that at the time of the execution of the obligations here sued on the assessed value of the property therein was $226,951.15. And defendant further avers that at the time of the execution of the obligations here sued on it was indebted in the sum of $19,334.92. And defendant further avers that the obligations here sued on were not executed to secure a temporary loan to be paid within one year in the anticipation of the collection of taxes."

The agreed statement of facts is well epitomized by counsel for appellant as follows:

"The J. B. McCrary Company, the appellant, installed an electric light plant for the appellee in 1911, and for the cost thereof the town gave appellant two notes, each for $2,950, bearing

interest at 8 per cent. per annum. These notes were secured by a mortgage upon the plant. In June, 1912, the town entered into a contract with appellant for the construction of a waterworks system and plant. In this contract it is provided that the plant shall cost $11,870, and for this the town agrees to pay by delivering its mortgage bonds bearing 6 per cent. interest per annum. It is provided that the town will issue its bonds in the sum of $18,000, bearing 6 per cent. interest, and appellant agrees to take these bonds and pay par therefor. Out of the proceeds of these bonds the original mortgage debt is to be paid, and the remainder applied on the cost of the waterworks plant. After the execution of this contract, and on July 19, 1912, the parties entered into a subsequent agreement, changing the original contract in respect to the rate of interest, and also providing that the town should pay appellant $2,491.20 for extras on plants and for attorney's fees, etc., and the town agrees to give its notes for the balance due on the electric light and waterworks plants after giving credit for the bonds—this balance is estimated at $2,761.20. These notes are to be paid out of 1912 taxes. The town voted $12,000 water and $6,000 light bonds, both issues running 30 years and bearing 5 per cent. interest, and upon their issue were delivered to appellant. The appellant then rendered the town a statement showing total due on electric light mortgage debt, $6,412 and $2,491.20 for extras on both plants, and, after deducting bonds, there is a balance of $2,773.20. This was divided into payments, and the notes sued on were executed by the town to secure the payment. All these notes were payable out of 1912 taxes, and were due February 1, 1913, and it is stated in the notes that they are given for the purchase money of electric light and waterworks plants."

W. R. Chapman, of Dothan, for appellant. F. B. Bricken, of Luverne, for appellee.

MAYFIELD, J. [1] Pleas 15 and 16 presented no valid defense to this action. The action is not on any bond or bonds so alleged to be issued in violation of the statute. This action is on two notes executed by the city. The consideration for the notes is not by the pleas shown to be illegal, nor do the pleas show any want of authority or power to execute the notes. If the action had been on one of the bonds issued as alleged, the pleas would be appropriate whether a good defense or not; but they are not shown to be appropriate in an action on these notes. Construing the pleas most favorably to the pleader, they show that the city made an unauthorized issue of bonds which, under a contract, plaintiff was to accept in payment of a debt due from it to plaintiff, and that thereafter, by consent of both parties, a valid issue was made in lieu of the invalid issue, and the notes were to cover the difference between the value of the first and the value of the second issue. The parties not only had a legal right to do what they did, but it was the duty of the city to make some such arrangement to cover the full consideration which it had agreed to pay plaintiff for the construction of the plants under the contracts. It is true that the record shows conclusively that the real consideration of the notes was the difference between the value of an issue of 6 per cent. bonds and that of

an issue of 5 per cent. bonds, and that it was not the "extras on plant, attorney's fees," etc., as stated in the modified contract; but this did not affect the validity of the amended contract, nor does it appear to be a badge of fraud because reciting a fictitious, rather than the real, consideration. The parties at that time were evidently of the opinion that the first issue, the 6 per cent. bonds, was invalid because not authorized by the statute, and that to have it affirmatively appear that the consideration of these notes was the difference in value between the 5 per cent. and the 6 per cent. issues would render the consideration illegal because it would appear to be an evasion of the statute. Under some conditions this would be true; but not in this case, where it clearly appears that it was not an attempt to evade the statute, but was an attempt to comply with it.

It does not follow, however, that because the original contract could not be complied with, on account of the statute as to issuing bonds at 6 per cent., the plaintiff should not be paid the agreed price for the two plants which it constructed, or was to construct for the defendant. The bonds were only a means by which the debt due from defendant to plaintiff was to be paid. If the bonds were never paid, the plaintiff would lose its debt. The plaintiff agreed to accept the bonds in lieu of money. The parties, however, fixed a money value therefor. There is no allegation or proof that there was any attempt to evade or violate the statute, as to the issue of bonds to be made in payment of the debt. The most that can be said of the allegations in the pleas, or of the proof, is that the parties, after the contract and the issue of the 6 per cent. bonds, concluded that the bonds were invalid by virtue of the statute, which, in such cases, only authorized the issue of bonds at not exceeding 5 per cent. interest, and that in order to comply with the statute, and not to avoid or evade it, they made the issue to conform with their view of the statute. And as it was and is perfectly obvious that a bond drawing 5 per cent. interest is less valuable than a bond drawing 6 per cent., the plaintiff agreed to accept the notes of defendant for the agreed difference of value between the two issues, one of which was substituted in lieu of the other. So the execution of the notes here sued on was effected as a part of the plan to comply with the spirit of both the statute and the contract, and not to avoid or evade either, in letter or spirit; and the original, by mutual consent, was changed to that extent. We fail to see anything wrong, in morals or in law, in the amended contract by which the notes here sued on were given and accepted as part payment for the plants erected or to be erected, and in lieu of bonds of their amount and value as agreed on between the parties.

We have treated pleas numbered 15 and 16 as if the statute did prohibit the issue of

6 per cent. bonds by towns within the class of defendant, i. e., those having less than 6,000 inhabitants. If the statute did not prohibit such issue, then, of course, there was nothing to base the contention upon that the amended contract was void by which the parties agreed to give and accept the notes as the difference between the value of the 6 per cent. bonds and the value of the 5 per cent. bonds.

[2] It has been held by this court that article 27 of chapter 32 of the Political Code, relating to the issue of municipal bonds for the purpose of constructing or maintaining public utilities for the municipality, has been repealed by a later and substituted act approved August 26, 1909, Acts Sp. Sess. 1909, p. 188. See Colvin v. Ward, 189 Ala. 198, 66 South. 98. Section 1432 of the Code was included in the article thus repealed or superseded by the later act, and hence the character and denominations of the bonds which can be issued by municipalities are controlled by the later act, and not by the provisions of the Code. Section 11 of the later act corresponds with section 1432 of the Code, and this section reads as follows:

"11. That the denomination of the bonds, and time for which the same are to run, the place of payment and the rate of interest to be paid on the same shall be fixed by the governing body of the municipality issuing the bonds; provided, that no bonds issued under the provisions of this act shall run for a longer period than thirty (30) years, and no bond issued by a city with a population exceeding six thousand shall bear a greater rate of interest than five per centum per annum, payable semiannually, but cities of less than six thousand population and towns, may issue bonds bearing six per cent. interest shall run for a longer period than ten years." Acts Sp. Sess. 1909, p. 192.

If the printed act is a correct copy of the original act, as it was passed, it will be observed that cities of less than 6,000 inhabitants when the bonds in question were issued were not prohibited from issuing bonds to the amount of $30,000, at 6 per cent., and hence both issues of the bonds in question were valid. We have endeavored to find the original act as it passed the Legislature, but were unable to find it in the office of the secretary of state or in the Department of Archives and History, in which similar documents are kept. It is, however, not necessary for us to ascertain or decide whether the printed copy is a correct copy of the original, for the reason that pleas 15 and 16 would not constitute a defense to this action, under the Code provision or under the amended statute, whether the printed copy be a correct or an incorrect copy of the original.

It follows that the trial court erred in overruling plaintiff's demurrer to pleas 15 and 16, because they presented no defense to the action.

[3] Plea 18 attempted to set up a defense to the action, on the ground that the debt sought to be collected was incurred in violation of section 225 of the Constitution. This section of the Constitution, among other things, prohibits cities or towns of less than 6,000 inhabitants from incurring debts in excess of 5 per cent. of the assessed value of the property therein, except for the purpose of constructing or acquiring waterworks, or gas, electric lighting, sewerage and street improvement systems, for either of which purposes an additional indebtedness, not to exceed 3 per cent., may be collected. A proviso of this section, however, excepts from the debt limitation debts then (in 1901) authorized by law to be created, together with those for temporary loans to be paid within one year, incurred in anticipation of taxes to be collected, not, however, exceeding one-fourth of the annual revenues of such city or town. The plea failed to state facts sufficient to make the defense availing. It is not alleged in terms, either directly or by necessary implication, that the debt sought to be collected was, when incurred, in excess of the debt limit fixed in the Constitution. The plea merely alleges that the city was of less population than 6,000, and then gives the assessed value of the property therein, together with the gross amount of the indebtedness of the city at the time "the obligation sued on was executed." It is true that the gross amount of indebtedness given exceeds 8 per cent. of the assessed values given, when the notes sued on were executed. But for aught that appears in this plea, the defendant city had not exceeded the debt limit fixed by the Constitution when it incurred the debt which formed the consideration of the notes on which the action is brought. The mere giving of a note as evidence, and security for the payment, of a debt, is not the creation, making, or incurring of a debt within the meaning of this constitutional inhibition. The notes sued on, so far as the plea shows, may have been mere evidences of, and security for the payment of, a debt or debts created long before the execution of the notes, and before the city had reached the constitutional debt limit. The notes or instruments sued on may have been mere renewals of other promises to pay debts and obligations long ago incurred by the defendant city. The plea does not show whether the debt forming the consideration or considerations of the obligations sued on was included in, or excluded from, the gross amount of indebtedness given.

While the plea does show that the obligation sued on was not executed to secure a temporary loan to be paid within a year, in anticipation of the collection of taxes, it fails to show that the gross amount of indebtedness stated did not include such "temporary loans to be paid within one year, made in anticipation of the collection of taxes." For aught that appears from the plea, such loans may have entered into the

gross amount of the indebtedness stated in the plea, and the amount of excess may have been due entirely to such loans.

Construing the plea most strongly against the pleader, as we must do on demurrer thereto, it does not appear therefrom that the defendant city has exceeded its debt limit; and, even if the contrary were the case, the plea would still fail to show that the debt which forms the consideration of the notes sued on was incurred after the city had exceeded its debt limit.

Even if we could construe the plea in favor of the pleader, it clearly appears that some of the city's debts are within, and some are without, the constitutional limit; and the plea does not show to which class the debts forming the consideration of these notes belong. The allegation, if it were made, that the city had exceeded its debt limit when these notes were executed would not amount to an allegation that the debt evidenced and secured thereby was created or assumed when the city had already exceeded the limit. It follows that the trial court should have sustained the demurrer to this plea.

As the trial was had on improper issues, it results that we must reverse the judgment and remand the cause, for another trial on proper and sufficient issues, although the trial was by the court without a jury, and on an agreed statement of facts.

It is probable that plea 18 can be amended so as to make it a good defense to the action as to a part of the amount, if not the entire amount, sought to be recovered.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.