(82 South. 663)

STOKES v. CITY OF MONTGOMERY.
(3 Div. 414.)

(Supreme Court of Alabama. June 27, 1919.)

1. MUNICIPAL CORPORATIONS ☞57—POWERS OF CORPORATION.

A municipal corporation may exercise only the powers granted in express terms, those necessarily applied in or incident to the powers expressly inferred, and those indispensably necessary to the accomplishment of the declared objects and purposes of the municipality.

2. MUNICIPAL CORPORATIONS ☞910—HOSPITALS—BONDS.

The city of Montgomery in 1908 had ample authority to aid, establish, set up, and regulate hospitals for the city, and to issue and sell bonds for such purposes, an election having been held in which the establishment of a hospital and the issuance of bonds for such purposes was voted for, under Acts 1907, p. 865, § 143 (Code 1907, § 1277) Gen. Acts 1903, p. 59 (Code 1907, § 1421).

<hr />

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. MUNICIPAL CORPORATIONS ⬥48(2)—BOND ISSUES—ELECTION—SUBSEQUENT CHANGE IN FORM OF GOVERNMENT.**

Where, in an election in 1908 it was voted in the city of Montgomery that the council be authorized to issue bonds to establish a hospital, there was nothing to prevent the issuance of the bonds in 1919, and. the establishment of the hospital, notwithstanding that the form of government was changed in 1911 and is now governed by a board of three commissioners, under Acts 1907, p. 865, § 143 (Code 1907, § 1277), Gen. Acts 1903, p. 59 (Code 1907, § 1421), and Gen. Acts 1909 (Sp. Sess.) p. 188, § 2.

**4. MUNICIPAL CORPORATIONS ⬥918(1) — BONDS—STATUTES.**

Gen. Laws 1919, p. 57, limiting the time for attacking validity of elections held by a municipality for the purpose of issuing bonds or levying taxes, is remedial and retroactive, and applies to the election of December 14, 1908, in the city of Montgomery, in which it was voted to authorize the city to issue bonds to establish a hospital, and it was proper to issue such bonds in 1919.

Appeal from Circuit Court, Montgomery County; W. L. Martin, Judge.

Bill by M. C. Stokes against the City of Montgomery. Decree for defendant, and plaintiff appeals. Affirmed.

Ball & Beckwith, of Montgomery, for appellant.

G. F. Mertins and Steiner, Crum & Weil, all of Montgomery, for appellee.

THOMAS, J. The bill was filed to prevent the issue and sale of bonds of the city of Montgomery in the sum of $50,000 for the purpose of building and equipping a city hospital. The bill prayed that the city be made party defendant; that it and its officials be permanently enjoined and restrained "from taking any further steps toward issuing and selling said bonds under the authority now claimed by them, and that their successors, in their respective official positions, may likewise be perpetually enjoined from doing so." The question for decision is presented by the sustaining of the city's demurrer holding the bill without equity.

Under the law having application in 1908 the city of Montgomery was governed by a mayor and city council, composed of aldermen duly selected from its several wards and from the city at large. Under legislative authority providing for the establishment and maintenance of a city hospital, on September 21, 1908—

"at a meeting of the city council of said city of Montgomery, duly called, and for which due notice was given and at which there was a quorum present, which meeting was regularly organized and in all respects legally authorized to transact the business of said city, an ordinance was duly and legally adopted to order and provide for an election to be held in said city on. December 14, 1908, to enable the qualified voters of said city to decide whether additional bonds of said city should be issued, including, with others, $50,000 of bonds for the purpose of building and equipping a city hospital, and said ordinance, which was duly approved by the mayor of said city, ordered that such election be held on Monday, December 14, 1908, for the purposes aforesaid; that said ordinance further ordered that notice of said election be given for 30 days by publication in the Montgomery Times, a newspaper then published in said city, once a week for three consecutive weeks, stating the purpose, time, and place of said election, the amount of the proposed bond issue, the rate of interest, length of time said bonds should run, and purposes for which they should 'be used; that said ordinance further provided the form and substance of the ballot to be used at such election and the mode of indicating the voter's choice thereon, and made all other provisions required by law for the purpose of holding said election, of making returns and canvassing and announcing the result thereof and defining the denominations, date of issue, rate of interest, the maturity of said bonds, and that they should not be sold for less than their face value, fixing the place of payment."

On October 5, 1908, another meeting of the city council of said city, at which a quorum was present qualified to do business, was held, at which the committee on finance reported favorably upon the ordinance to hold the election for the purpose of voting on said bonds as hereinabove stated, and at said meeting said ordinance was duly and legally adopted and spread upon the minutes of the meeting, and duly approved by the mayor of said city and published as required by law. And on October 20, 1908, said ordinance providing for said election, as adopted on October 5, 1908, and approved October 9, 1908, was duly and legally published as required by the ordinance and the statutes governing such elections, and due allegations thereof are contained in the bill.

The bill further avers that due "resolution was presented for the appointment of managers and returning officers for said election, which resolution was duly and legally adopted"; that there was duly and legally appropriated a sufficient sum of money to pay the expense of conducting the election upon the issue of said bonds; that "on December 15, 1908, at 6 o'clock p. m. a meeting of said city council was held, pursuant to an order of the president thereof given to each member, and at which there were present a quorum authorized to transact business; that at said meeting the votes cast in the election upon the question of the issuance of said bonds were duly and legally canvassed, and upon the opening of the ballot boxes and counting thereof it appeared and was declared that there had been cast in favor of the issue of said $50,000 of bonds for the erec-

tion and equipment of a city hospital a majority of 490 votes, and that said election had been conducted in all respects as required by law, and said result was duly and legally declared to be in favor of issuing said bonds."

For reasons which do not appear in the bill and which could not affect the merits of the case, several of the authorized issues of bonds (other than the hospital bonds) were issued pursuant to the authority of law and aforesaid election. The reason why said hospital bonds were not then issued is an immaterial inquiry.

In 1911 the form of government of the city of Montgomery was changed under the general law controlling the municipalities of the state, and since that time the city has been governed by a board of three commissioners. Its said officials are respondents herein. On May 7, 1919, this board of commissioners decided to issue and sell the bonds of the city so authorized, and build and equip a city hospital. This determination of the board of commissioners (respondents in the instant bill) took form on the part of said board of commissioners of the city of Montgomery in the following ordinance:

"Adjourned Regular Meeting. Board of Commissioners, City of Montgomery, Ala. May 7, 1919. Present: President Robertson, Vice Pres. Tyson and Commissioner Stough—3. Absent: 0. The president stated that the meeting was called pursuant to adjournment of May 6, 1919.

"New Business. The following ordinance was taken from the table and placed upon its second reading:

"An ordinance to authorize and provide for the issuance of bonds of the city of Montgomery in the aggregate amount of fifty thousand dollars for the purpose of building and equipping a city hospital.

"Whereas, under and pursuant to an ordinance adopted by the city council of Montgomery on the 5th day of October, 1908, entitled 'An ordinance to order and provide for an election to be held in the city of Montgomery on Monday December 14, 1908, for the purpose of having the qualified voters of the said city of Montgomery vote upon and decide the question as to whether or not the additional bonds of the city of Montgomery shall be issued in the sum of fifty thousand dollars for the purpose of building and equipping a city hospital,' which said ordinance was approved on the 9th day of October, 1908, and under and pursuant to said ordinance and the law of Alabama an election was holden in the city of Montgomery on the 14th day of December, 1908, at the voting places in the various wards of the city for the purpose of qualified electors of the said city voting upon and deciding the question as to whether or not the bonds of the city of Montgomery should be issued in the amount of fifty thousand dollars for the purpose of building and equipping a city hospital, and,

"Whereas, the voters at such election decided in favor of such bond issue, a majority of all the legal votes cast having been 'For fifty thousand dollar city hospital bond issue':

"Now, therefore, be it ordained by the board of commissioners of the city of Montgomery, Alabama, as follows:

"Sec. 1. That the president of the board of commissioners be and he is hereby authorized and instructed to have engraved or lithographed fifty coupon bonds of the city of Montgomery, each of which said bonds shall be in the denomination of one thousand dollars, and shall have thereto attached sixty coupons of the denomination of twenty-five dollars each; each of said bonds shall be dated July 1, 1919, and shall bear interest at the rate of five per centum per annum, said interest to be payable semiannually on the first days of January and July of each year, from the date of the issue to maturity each of said semiannual interest installments being evidenced by one of the sixty coupons attached to the said bond, and both the bonds and the coupons thereto attached shall be issued in the form of negotiable paper, payable to the bearer in gold, at the office of the Old Colony Trust Company in the city of Boston, commonwealth of Massachusetts.

"Said bonds shall be signed by the president of the board of commissioners and countersigned by the treasurer and attested by the city clerk of the city of Montgomery and the official corporate seal of the said city shall be impressed upon the same. The coupons attached to the said bonds shall also be signed by the president of the board of commissioners and treasurer, but if the signatures of the said president of the board of commissioners and treasurer shall be lithographed in facsimile on said coupons, such lithographic signatures shall be deemed and held to have the same force and effect as original signatures.

"Sec. 2. Be it further ordained: That said bonds and coupons shall be in substantially the following form, to wit: [Setting out the form of bond and interest coupon.]"

Section 3 provides that it shall be the duty of the clerk of the city of Montgomery to record the bonds as therein prescribed, etc.

Section 4 ordains:

"That the money realized from the sale of the bonds herein provided for shall be and is hereby set apart as a separate fund for the purpose of building and equipping a city hospital, none of which money shall be expended for any purpose other than building and equipping a city hospital."

[1, 2] It is established that a municipal corporation may exercise only the powers "(1) granted in express terms; (2) those necessarily implied in, or incident to the powers expressly conferred; and (3) those indispensably necessary to the accomplishment of the declared objects and purposes of the municipality." Mayor, etc., Wetumpka v. Wetumpka Wharf Co., 63 Ala. 611, 624, 625; City of Eufaula v. McNab, 67 Ala. 588, 590, 42 Am. Rep. 118; Ex parte Mayor, etc., of Florence, 78 Ala. 419, 420; Allen v. Intendant, etc., of La Fayette, 89 Ala. 641, 8 South. 30, 9 L. R. A. 497; New Decatur v. Berry, 90 Ala. 432, 433, 7 South. 838, 24 Am. St.

Rep. 827; Cleveland School Furn. Co. v. Greenville, 146 Ala. 559, 562, 563, 41 South. 862; Colvin v. Ward, 189 Ala. 198, 199, 66 South. 98; Pearson v. Duncan & Son, 73 South. 406, 408;[1] Best v. City of Birmingham (App.) 78 South. 100, 102;[2] McCrary Co. v. Town of Brantley, 79 South. 602, 604.[3] The city of Montgomery had ample authority under the municipal code, when said ordinances passed, the election held, and the declared result thereof evidenced by ordinance, to aid, establish, set up, and regulate hospitals for the city, and also authority to issue and sell bonds for such purpose. Acts 1907, pp. 790, 865, § 143 (Code 1907, § 1277); Gen. Acts 1903, p. 59 (Code 1907, § 1421). This right of the city to issue and sell bonds, authorized by election of the people and as provided by law for the erection of infirmaries or hospitals, or for rebuilding, extending, enlarging, or repairing the same, was carried into General Acts (Special Session) of 1909, p. 188, § 2; that is, the power of the municipality to construct public buildings embraced hospitals and infirmaries (Code, §§ 1277, 1421), and was carried forward into the act of force at the time of the ordinance of May 7, 1919, for the issue and sale of the bonds designated as the hospital bonds. Goodson v. Dean, Judge, 173 Ala. 301, 304, 55 South. 1010.

The bill further avers that—

"At the time of the adoption of the various ordinances and resolutions hereinabove referred to and set forth, and at the present time and at all intervening times, the outstanding indebtedness of said city of Montgomery has been less than the limit placed thereon by law and by the Constitution of the state of Alabama; that on May 30, 1919, its total indebtedness was $3,827,923.34 of which there is exempt from consideration in estimating the limit of said indebtedness, under section 1430 of the Code of Alabama of 1907 (Const. Ala. § 225), $2,250,090, the items composing said exemptions being shown" [which were for sanitary and storm sewers, waterworks, schools, bonds for improving the streets, and temporary loans] that the amount of said indebtedness not exempt was on said date, and does not now exceed, the sum of $1,577,833.34; that the limit of said indebtedness is and was then $1,762,215.91—making the amount of the indebtedness of said city $184,-382.57 less than the constitutional limit."

The exhibit to the bill, giving the city's indebtedness on said date, may be recapitulated as follows:

| | |
|---|---:|
| 1918 Assessed value of real property | $18,572,654 00 |
| Personal property | 6,601,859 00 |
| | $25,174,513 00 |
| Limit of indebtedness, 7 per cent | $ 1,762,215 91 |
| Amount used | 1,577,833 34 |
| Amount to be used if needed | $ 184,382 57 |

The provisions of section 1430 of the Code of 1907, expressing the constitutional limitations of indebtedness incurrable by cities of the class of Montgomery (Const. § 225), are as follows:

"No city, town, or other municipal corporation having a population of less than six thousand, except as hereafter provided, shall become indebted in an amount including present indebtedness, exceeding five per centum of the assessed value of the property therein, except for the construction of or purchase of waterworks, gas, or electric lighting plants, or sewerage, or for the improvement of streets, for which purposes an additional indebtedness not exceeding three per centum may be created; provided, this limitation shall not affect any debt now authorized by law to be created, nor any temporary loans to be paid within one year, made in anticipation of the collection of taxes, not exceeding one-fourth of the annual revenues of such city or town. All towns and cities having a population of six thousand or more, also Gadsden, Ensley, Decatur, and New Decatur, are hereby authorized to become indebted in an amount including present indebtedness, not exceeding seven per centum of the assessed valuation of the property therein, provided that there shall not be included in the limitation of the indebtedness of such last-described cities and towns the following classes of indebtedness, to wit: Temporary loans, to be paid within one year, made in anticipation of the collection of taxes, and not exceeding one-fourth of the general revenues, bonds or other obligations already issued, or which may hereafter be issued for the purpose of acquiring, providing, or constructing schoolhouses, waterworks and sewers; and obligations incurred and bonds issued for street or sidewalk improvements [Acts 1903, p. 59] where the cost of the same, in whole or in part, is to be assessed against the property abutting said improvements; provided, that the proceeds of all obligations issued as herein provided, in excess of said seven per centum shall not be used for any purpose other than that for which said obligations were issued. Nothing contained in this article shall prevent the funding or refunding of existing indebtedness. This section shall not apply to the cities of Sheffield and Tuscumbia."

Of necessity, the fundamental provisions of this section were not modified by the Act of August 26, 1909 (Gen. Acts 1909, p. 188). Const. § 225: Colvin v. Ward, 189 Ala. 198, 66 South. 98; Ward v. McDonald, 201 Ala. 237, 77 South. 827, 833.

[3] It would appear that there is no inhibition of the Constitution, statute, or ordinance that would now prevent the board of city commissioners from issuing and selling said bonds or from applying the proceeds as prescribed by law, unless the time elapsing between the authorization by the election and the proposed issue and sale of the bonds has affected the right of the city in the premises. Does the time that has elapsed from the due authorization of said bond issue, to the proposed issue and sale of the bonds to build the hospital, pursuant to the last ordinance declaratory of the necessity

[1] 198 Ala. 25.    [2] 16 Ala. App. 353.    [3] 202 Ala. 136.

therefor (May 7, 1919), affect the power of the board of commissioners or the right of the city of Montgomery to issue and sell the bonds that funds may be available for the building and equipping of a hospital?

It is conceded in argument of counsel, and there is no question but that the city could have legally issued and sold these bonds on December 15, 1908, the time of its authorization. The fact of the changed form of government of the city did not affect that right. No statute or ordinance has been passed since authorization by election of the bond issue negativing the right or power of the city to issue the same. The fact that the bond issue was required to be authorized or sanctioned by a majority vote cast in favor thereof, at the election held pursuant to the statute for such purpose, did not require the issue of the bonds at or within a specified time, since there was no statute to that end. The election was had in conformity with the statutory requirement for the consent of the people to the governing body of the city (mayor and council, or board of city commissioners) to exercise the power at such time thereafter as deemed by such body to be necessary and expedient. We are of opinion that the bonds in question may be issued and sold at this time, that the proceeds of such sale may be expended for the specific purpose authorized by the people and in accordance with the declared judgment of the board of commissioners. The exercise of this power by the board of city commissioners and the necessity and expediency for the erection and equipment of a city hospital were given solemn expression by the board of commissioners of the city of Montgomery in the aforesaid ordinance of May 7, 1919.

We have sought diligently and found no authority to the contrary. In McQuillin on Municipal Corporations, vol. 5, § 2297, p. 4847, the author says:

"No rule can be laid down as to within what time bonds must be issued after they have been voted for or their issuance directed by the council (Chickaming Tp. v. Carpenter, 106 U. S. 663, 1 Sup. Ct. 620, 27 L. Ed. 307); but it has been held that the fact that bonds are not issued until nearly two years after the ordinance making provision for their payment is immaterial."

The case of Chickaming v. Carpenter, supra, 106 U. S. 667, 1 Sup. Ct. 623 (27 L. Ed. 307), supports Mr. McQuillin's text. Mr. Chief Justice Waite said:

"We see nothing in the statutes which takes away from the township authorities the right to execute and deliver bonds, if for any reason it is not done within the time named. The word 'shall' as used in the statute undoubtedly gives the township officers the whole of the sixty days to get the bonds out, but it certainly does not imply that if they fail to do it voluntarily within the time they cannot be compelled to do so afterwards. And if they can be compelled to do so, it necessarily follows that they should do it voluntarily. We have not been referred to any decisions by the courts of Michigan to the contrary, and, construing the statute for ourselves, we think that valid bonds may be issued after the time. This being so, the antedating does not invalidate the bonds."

The law under which the bonds were issued in Chickaming v. Carpenter, supra, provided that if any township voted the aid to railroads, which was authorized, it "shall, within sixty days after the question of aid is determined by a vote of the electors, * * * issue its coupon bonds for the amount so determined to be granted." See, also, 28 Cyc. 1600.

As observed in State ex rel. v. Gordon, 217 Mo. 103, 122, 116 S. W. 1099, there is nothing disclosed by this record which indicates, or from which it can be presumed, that the voters had revoked, or intended to revoke, the authority given by the election in this case of December 14, 1908. There was, or is, no statute requiring that said authorized bonds be issued and sold within a designated time. The necessity for the city hospital and the time of issue and sale of the bonds and the erection of the hospital were left to the sound discretion of the city officials, and we cannot say that this discretion has not been reasonably exercised. By the delay they have imposed no burdens on the people by interest charges in the meantime, and it is presumed that they have proceeded to give the necessary hospital facilities at a time when most needed by the municipality and its residents.

[4] The present Legislature gave expression of its intent to remove any question of the right to test the validity of elections held by any municipality for the purpose of issuing bonds or levying taxes, or to attack the issuance of bonds pursuant to such election, by fixing the limitation of the institution of such action as "within six months from date of declaring the result of said election." Gen. Laws 1919, p. 57. The legislative intent finding expression in the act makes the statute remedial and retroactive, applying to the election of December 14, 1908, authorizing the bond issue in question. We have not rested the decision on this point. The judgment of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.