No. 32,358

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, etc., *Appellant*, v. THE CITY OF TOPEKA, OMAR B. KETCHUM, as Mayor of the City of Topeka, et al., *Appellees*.

(41 P. 2d 260)

Opinion filed February 14, 1935.

*Roland Boynton,* attorney-general, and *Tinkham Veale,* of Topeka, for the appellant.

*Randal C. Harvey,* city attorney, and *Henry D. Dangerfield,* assistant city attorney, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to enjoin the issuance of bonds by the city of Topeka, and from a ruling sustaining a demurrer to its petition the plaintiff appeals.

Omitting formal allegations, the petition alleged that at a special election held November 2, 1926, the voters of Topeka authorized and directed the governing body of the city to acquire sites and to construct fire stations and to issue bonds of the city in a sum not exceeding $165,000 to pay therefor, and that it did construct one station costing $92,265.63; that on October 23, 1934, the governing body passed a resolution to purchase a site west of Lane street and to construct a fire station thereon and to issue bonds to pay the cost and expense of construction over and above any amount which may be obtained from the federal government for relief work and to levy a general tax for the payment of said bonds. A copy of the resolution attached to the petition sets out the history above noted, and that at this time there is no fire station west of Lane street, and that part of the city does not have adequate fire protection, and calls for the issuance of bonds not exceeding the unexpended amount between the $165,000 authorized and the $92,265.63 already issued, or $72,734.37. It was further alleged that since November, 1926, the circumstances and conditions have very materially changed in that in 1926 there was no necessity for a fire station west of Lane street; that at said time there was general business prosperity in Topeka, but at the present time, on account of business depression, the taxpayers of the city are much less able to bear the additional tax burden which would be caused by the issuance of such bonds; that on account of the lapse of time since the election in 1926, the purchase of a site and issuance of bonds for the above purposes are not authorized, as the voters did not authorize the making of improvements and issuance of bonds eight years thereafter; that the purchase of site, erection of a fire station and the issuance of bonds would be in violation of law. It is further alleged that the governing body is threatening to and, unless restrained, will purchase the site, construct the station and issue the bonds, all without lawful authority, etc. To raise the question of law involved, defendants demurred, and it is from the sustaining of that demurrer plaintiff appeals. Although not shown by the petition, we are informed by the parties that the proceedings in 1926 were in virtue of R. S. 13-1024 which, for our purposes, is abstracted to read as follows:

"For the purpose of paying for any . . . public building . . . or for any other improvements or works not otherwise herein provided for, and for the purpose of rebuilding, adding to or extending the same from time to time, as the necessities of the city may require, the city may borrow money and issue its

bonds for the same; but no bonds shall be issued for such purposes unless the same are authorized by a majority of the votes cast at an election held for that purpose. . . . "

The sole question presented is whether, by lapse of time, the city abandoned the proceedings for making improvements. There is no statute fixing the time within which the bonds must be issued or the improvement made, neither has there been any affirmative action by the city after the date of the election in 1926 and prior to the resolution in 1934 indicating an intention not to proceed with the erection of other fire stations to be paid for out of the remaining authorized bond issue.

In 44 C. J. 295 it is stated:

"The intention of the municipal authorities to abandon proceedings for the making of a public improvement may be implied, as well as express, but such an intention will not be inferred unless the facts are not reasonably consonant with any other theory."

The petition does not charge an abandonment, but alleges two grounds—which to a certain extent are inconsistent with each other —why it should be held the governing body has waited too long to exercise the authority conferred on it. The claim that in 1926 there was no necessity for a fire station west of Lane street is an argument in favor of waiting. It would have been improvident to build a station when there was no need for it. The argument that the depression makes it more burdensome to pay taxes to retire the bonds has more force, standing alone, but it ignores the present policy of both the state and federal governments to proceed with public works in order to afford employment.

The statute under which the bonds were authorized not only does not contain a limitation of time, but shows on its face that it is not limited to a single bond issue for a single improvement, for it uses this language:

"for the purpose of rebuilding, adding to, or extending the same from time to time as the necessities of the city may require."

The proposition submitted in 1926 was to authorize the city "to acquire lands for sites and establish and construct thereon fire station buildings," which indicated a program of improvement to be carried on in the future under the discretion of the governing body. It did not present a situation like *State, ex rel., v. City of Lawrence,* 98 Kan. 808, 160 Pac. 217, where bonds were voted to purchase a water plant, and it was held that mandamus would

lie to compel issuance of bonds for that purpose. Here discretion was vested in the governing body; it was contemplated that the bonds would be issued and the proceeds used to provide fire stations where needed. Did the fact the city awaited development amount to an abandonment of the project, or a recognition that no other stations should be built out of the particular authorized bonds?

No Kansas case under a similar situation has been cited, nor does our search disclose any. As bearing on the question, our attention is directed to *State, ex rel., v. Davis*, 114 Kan. 270, 283, 217 Pac. 905, and *State, ex rel., v. Davis*, 115 Kan. 10, 221 Pac. 895, involving issuance of bonds to pay the soldiers' bonus. Under chapter 255 of the Laws of 1921 (R. S. 73-101) an election was held authorizing issuance by the state of bonds not exceeding $25,000,000 to pay the soldiers' compensation at the rate of one dollar per day. It developed that the amount would not be sufficient, and by chapter 6 of the Laws of 1923 Special Session (R. S. 73-106, *et seq.*) an additional $7,000,000 of bonds was authorized, the validity of which was questioned, and in the above cases it was held they might be issued without a submission to the electorate. While the last-mentioned act specifically allowed issuance of bonds in installments, by reason of change of time in which claims could be made (see Laws 1925, ch. 246; Laws 1927, ch. 283; Laws 1929, ch. 246; Laws 1931, ch. 277, and Laws 1933, ch. 269), the amount necessary to be issued has increased and installment bonds have been issued from time to time, the last installment being in March, 1934, in the amount of $250,000, as appears from the records of the state compensation board. While no question appears to have been raised, here bonds are issued eleven years after their authorization.

In 19 R. C. L. 1000 is the following:

"A provision that the question whether bonds shall be issued for a certain purpose shall be submitted to the taxpayers to be affected thereby does not cause a vote in the affirmative to lapse upon the completion of the assessment roll for the following year, even though there may have been changes in the body of the taxpayers in the meantime. All that is required is that the municipality shall proceed with reasonable promptness to exercise the authority given to it at the election, and if this is done the fact that the body of the taxpayers may have changed since the election was held does not affect the validity of the bonds issued as security for the debt."

And in 44 C. J. 1207, note 13 (*b*), is the following:

"In the absence of a statute requiring the bonds to be issued within a specified period of time after the election, the time of issuance rests within the sound discretion of the city officials."

In support of which *Stokes v. City of Montgomery*, 203 Ala. 307, 82 So. 663, is cited. In that case it was said:

"It would appear that there is no inhibition of the constitution, statutes, or ordinance that would now prevent the board of city commissioners from issuing and selling said bonds or from applying the proceeds as prescribed by law, unless the time elapsing between the authorization by the election and the proposed issue and sale of the bonds has affected the right of the city in the premises. Does the time that has elapsed from the due authorization of said bond issue, to the proposed issue and sale of the bonds to build the hospital, pursuant to the last ordinance declaratory of the necessity therefor (May 7, 1919), affect the power of the board of commissioners or the right of the city of Montgomery to issue and sell the bonds that funds may be available for the building and equipping of a hospital?

"It is conceded in argument of counsel, and there is no question but that the city could have legally issued and sold these bonds on December 15, 1908, the time of its authorization. The fact of the changed form of government of the city did not affect that right. No statute or ordinance has been passed since authorization by election of the bond issue negativing the right or power of the city to issue the same. The fact that the bond issue was required to be authorized or sanctioned by a majority vote cast in favor thereof, at the election held pursuant to the statute for such purpose, did not require the issue of the bonds at or within a specified time, since there was no statute to that end. The election was had in conformity with the statutory requirement for the consent of the people to the governing body of the city (mayor and council, or board of city commissioners) to exercise the power at such time thereafter as deemed by such body to be necessary and expedient. We are of opinion that the bonds in question may be issued and sold at this time, that the proceeds of such sale may be expended for the specific purpose authorized by the people and in accordance with the declared judgment of the board of commissioners. The exercise of this power by the board of city commissioners and the necessity and expediency for the erection and equipment of a city hospital were given solemn expression by the board of commissioners of the city of Montgomery in the aforesaid ordinance of May 7, 1919." (p. 310.)

In *Covington v. McInnis*, 144 S. C. 391, 142 S. E. 650, injunction was sought to prevent issuance of bonds seven years after they were authorized at an election. In discussing the effect of delay, it was said:

"The only limitation which should affect the right to issue bonds under these circumstances is where the purposes for which the bonds were originally voted have ceased to be necessary, or where the conditions have so changed that it would be inequitable to allow the bonds to be issued, and, unless one of these conditions clearly appears to the satisfaction of the court, the exercise of their discretion by the trustees should not be interfered with." (p. 394.)

In *In re Verde River Irri., etc., Dist.*, 37 Ariz. 580, 296 Pac. 804, it was said:

"The seventh point raised is that too great a length of time elapsed between the election at which said bonds were authorized and the date of the decree of the lower court validating them, it being a period of some seven years. The ordinary rule is that unless the statute requires bonds to be issued within a specified period of time after the election at which they were authorized, the time of issuance rests in the sound discretion of the officials upon whom that duty is imposed. (*Stokes v. Montgomery,* 203 Ala. 307, 82 So. 663; *Covington v. McInnis,* 144 S. C. 391, 142 S. E. 650; 44 C. J. 1207.)" (p. 590.)

The most recent case called to our attention is *Hager, Mayor, v. Bd. of Ed. of City of Ashland,* 254 Ky. 791, 72 S. W. 2d 475, involving bonds authorized in 1929, and about to be issued in February, 1934, where it was said:

"It is the settled rule that a county or municipality is not required to issue all the bonds voted at an election at one time, but may issue them as needed, and a delay in issuing a part or all of the bonds, at least for a reasonable time, does not bar the right to issue them when necessity arises. Thus in the case of *Sutherland et al. v. Board of Education of City of Corbin et al.,* 209 Ky. 351, 272 S. W. 887, the bonds were authorized in 1922 and issued and sold in 1925. Their issuance was upheld. So, too, in *Young v. Fiscal Court of Trimble County,* 190 Ky. 604, 227 S. W. 1009, where the bonds were authorized in 1916 and issued and sold in 1921, and in the *City of Dayton v. Board of Education of City of Dayton,* 201 Ky. 566, 257 S. W. 1021, where the bonds were authorized in 1919 and issued and sold in 1922, and in *Nall v. City of Elizabethtown,* 200 Ky. 321, 254 S. W. 893, where the bonds were issued four years after they were authorized. In the light of these authorities, and especially that of the Young case, we cannot say that more than a reasonable time has elapsed since these bonds were authorized and that therefore the board of education is not precluded by the lapse of time from requiring the city of Ashland to now issue them." (p. 792.)

Our conclusion is that there being no statute specifying or limiting the time within which the improvements must be made and the bonds issued after they are authorized, the governing body could proceed at any reasonable time within its discretion; that unless it appear to the contrary, the passage of the resolution to proceed would be within its discretion; that under the allegations of the petition no abuse of discretion is pleaded, nor do the facts pleaded show such abuse; that mere lapse of time is not of itself sufficient to show abandonment, and under the facts and circumstances of this case, the court should not substitute its judgment for that of the governing body of the city as to the advisability of completing the improvement authorized by the electorate of the city.

It follows that the judgment of the trial court sustaining the demurrer to the petition was correct, and it is affirmed.

HARVEY, J., not sitting.